# CASES

### DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## OCTOBER TERM, 1899.

---

## UNION FRATERNAL LEAGUE *v.* ,WALTON.

109    1
s112 316
f 112 548
f112 549
f112 550
j112 553
109    1·
d122  56

1. While a valid contract of insurance can not lawfully be taken on the life of another by one who has no insurable interest therein, because it contravenes public policy, yet, as one has an insurable interest in his own life, he may lawfully procure insurance thereon for the benefit of any other person whose interest he desires to promote. Such a contract can not be defeated because of the want of insurable interest in the beneficiary, when it appears that the person whose life was insured acted for himself, at his own expense and in good faith, to promote the interest of the beneficiary, in taking out the policy. A contract so entered into is in no sense a wagering or speculative one. LUMPKIN, P. J., dissenting.
2. A contract entered into by a benefit society with a member is executory,. and its terms will be ascertained from the certificate issued .to the member, in connection with the charter and laws of the society, subject to the law of the State under which it was created; and if nothing exists which restricts the appointment of a beneficiary to receive the benefit fund, the member may, at the time he executes the contract, legally designate whomsoever he pleases as beneficiary, and his right to do so can not be questioned.

Argued May 10, — Decided October 25, 1899.

Action on insurance certificate. Before Judge Hart. Laurens superior court. January term, 1899.

*Anderson, Felder & Davis*, for plaintiff in error.
*Charles Z. McCord*, contra.

LITTLE, J.  R. Annie Walton instituted an action against the Union Fraternal League, an insurance corporation of the State of Massachusetts, doing business in Georgia, to recover the sum of two thousand dollars besides interest, being the amount of a certain certificate of membership insurance issued by the defendant company on the life of Sid A. Pughsly Jr., in which the plaintiff was named as the beneficiary.  The certificate was taken out by Sid A. Pughsly Jr. on his own life and upon his own application, and kept in force at his own expense as a member of the local lodge of the defendant company doing business in Laurens county, Georgia.  To the petition was annexed a copy of the certificate of membership and insurance, by which it appears that the defendant company undertook to pay, out of its beneficiary fund of the class in which the certificate was issued, a sum of money not exceeding two thousand dollars to Mrs. R. Annie Walton on the death of Pughsly.  In the certificate the beneficiary, Mrs. Walton, is named as "cousin."  Attached to the certificate are a number of conditions to which no particular reference need be made. Certain tables of designations and figures are also printed on the back of the certificate, and in reference to them is a collection of rules designated as "laws on the foregoing table," which seem to be more in the nature of explanation than of arbitrary rule.  Among these we find the following : "Speculative risks will not be tolerated, nor will any benefits be paid to other than blood relatives, or dependents on the member."  "The foregoing Plan of Family Protection is devised to insure permanent success, and to restrict the admission of undesirable people."  It appears from the certificate that the defendant is a Massachusetts corporation, and the signatory clause recites that it was executed in Boston, Massachusetts.  It does not, however, otherwise appear whether the contract was executed in Georgia or Massachusetts, nor does the record contain the charter of the defendant company, nor any part of its constitution or by-laws.  The defendant filed a demurrer to the petition, on the sole ground that it set forth no cause of action, because it did not appear that the said Mrs. R. Annie Walton, the beneficiary named in the certificate of insurance, had any

insurable interest in the life of the insured Pughsly, it being admitted as a fact on the hearing that the beneficiary was not related to the assured on whose life the insurance was taken out by himself for her benefit. The demurrer was overruled, and error assigned to that judgment. One question only arises for determination under the record in this case; that is, whether a beneficiary, named by a member of a fraternal or benevolent association which provides for life-insurance, is entitled, after the death of such member, to recover the amount of the benefit without showing any insurable interest in the life of the deceased. The contention of the plaintiff in error is that the contract under consideration must be governed by the principles of law applicable to ordinary contracts of life-insurance, and the legal proposition is submitted that a policy in favor of one who has no insurable interest is void, as it is a wager contract and against public policy. We can not assent to the correctness of this proposition.

A contract of life-insurance is defined by our Civil Code, § 2114, as one by which the insurer for a stipulated sum engages to pay a certain amount of money if another dies within the time limited by the policy. The last paragraph of this section is in the following words: "The life may be that of the assured, or of another in whose continuance the assured has an interest." Taken together, the meaning of the section is, that one may insure his own life without qualification ; that he may not insure the life of another unless he has an interest in the continuance of the life of that other. Necessarily, in the first instance, the amount of the policy is to be paid to some one other than the insured, because ordinarily under the contract the amount is not payable until his death. . By section 2116 of the Civil Code it is provided that the assured may direct the money to be paid to his personal representative, or to his widow, or to his children or to his *assignee*; and it is further provided that when the insurer gives such directions, no other person can defeat the same, and that the assignment is good without such assent. We are aware that there is a seemingly irreconcilable conflict between the adjudicated cases as to whether the assignee of a life policy takes anything under the

assignment unless he has an insurable interest in the life insured.    But it will be noted that under the provisions of our code no such qualifications are made essential to the validity of the assignment, nor do we think under sound reasoning any can exist.    The rule which restricts the execution of a valid contract of insurance on the life of another to one who has an insurable interest in that life is founded alone on public policy, and it may be stated in general terms that where one has an interest in a life that interest is insurable.    Beyond all controversy a man has an insurable interest in his own life, and we fail to see, when having that interest he enters into a contract with an insurer by which, for a stipulated sum which he periodically pays, the insurer becomes liable to pay a given sum of money at the death of the insured, why he who is most interested, whether actuated by the ties of relationship, motives of friendship, gratitude, sympathy or love, may not make the object of his consideration the recipient of his own bounty.    If it be replied that a temptation is extended to the beneficiary by improper means to hasten the time when he should receive the amount of the policy (and it is for this reason that such contracts will only be upheld when the idea of temptation is rebutted by the natural ties of blood or affinity), we might well ask ourselves why executory devises, bequests, provisions for support and maintenance provided for friends and even strangers are not subject to the same inhibition, as being against public policy.    But while, as we have before said, many adjudicated cases, frequently contrary to natural justice, clearly hold that unless the beneficiary or assignee has an insurable interest in the life of the insured the policy or assignment is void, we shall undertake to show by authority that such is not the rule of the law.

Mr. Greenhood, in his treatise on the Doctrine of Public Policy in the Law of Contracts, pp. 279, 280, lays down two rules so abundantly supported by adjudicated cases as to make their citation impractical here.  The first is: "A policy of insurance issued on the life of one in whose life he to whom the policy is issued has no insurable interest, unless he is a mere trustee for the life-assured ; or a policy issued to one upon his own

life, if he be merely the agent of another who is without inter-
est, for whose benefit the insurance is thus taken, although
upon the face of it it is payable to such person, is void." The
second is: "But one may insure his own life for the benefit of
any person, although the latter may have no insurable interest
in the life of the former." In support of the rule last laid down,
the author quotes from a leading case, Provident Life Ins. Co.
v. Baum, 29 Ind. 240, the following strong and expressive lan-
guage: "It can not be questioned . . that a person has an
insurable interest in his own life, and that he may effect such
insurance, and appoint any one to receive the money in case of
his death during the existence of such policy. It is not for the
insurance company, after executing such a contract, and agree-
ing to the appointment so made, to question the right of such
appointee to maintain the action. If there should be any con-
troversy as to the distribution among the heirs of the deceased
of the sum so contracted to be paid, it does not concern the in-
surers. The appellant's contract with the insured is to pay the
money to the appellee, and upon such payment being made, it
will be discharged from all responsibility. So far as the insur-
ance company is interested, the contract is effective as an ap-
pointment of the appellee to receive the sum insured."

Mr. Joyce in his Treatise on Insurance, vol. 2, § 918, declares
that "the weight of authority seems also to favor the proposi-
tion that if a person effects a valid insurance upon his own
life, and the transaction is bona fide and not intended to cir-
cumvent the law, the assignment to another will be upheld,
even though the assignee has no insurable interest in the life
insured." In the case of Amick v. Butler, 111 Ind. 578, Mitch-
ell, J., delivering the opinion, refers to this question in the fol-
lowing language: "It has never been seriously questioned but
that a person may insure his own life, and by the terms of the
policy appoint another to receive the money upon the event of
the death of the person whose life is insured; or, having taken
a policy valid in its inception, that he may in good faith as-
sign his interest in such policy, as in any other chose in ac-
tion." For which he cites: 51 Ind. 24; 53 Ind. 380; 3 Sim.
149; 138 Mass. 24; 11 R. I. 439. He further says, "In either

case the essential point is that the transaction be bona fide, and not merely a cover for obtaining wagering or merely speculative insurance, and a device to evade the law," citing 29 Ind. 236 ; 85 N. Y. 593; 98 Mass. 381; 94 U. S. 457; 80 Ill. 35; 70 Pa. St. 450. And in relation to the conflict between such rulings and the adjudicated cases which seem to hold otherwise, he says: "The cases which hold invalid the taking or assignment of insurance policies turn upon the fact that in each case the transaction was found to be merely colorable, and a scheme to obtain speculative insurance," citing 41 Ind. 116 ; 15 Wall. 643; 104 U. S. 775. Mr. Justice Bradley, in the case of Conn. Mut. Life Ins. Co. *v.* Schaefer, 94 U. S. 460, in discussing what is an insurable interest, says: "But precisely what interest is necessary, in order to take a policy out of the category of mere wager, has been the subject of much discussion. In marine and fire insurance the difficulty is not so great, because there insurance is considered as strictly an indemnity. But in life insurance the loss can seldom be measured by pecuniary values. Still, an interest of some sort in the insured life must exist. A man can not take out insurance on the life of a total stranger, nor on that of one who is not so connected with him as to make the continuance of the life a matter of some real interest to him. It is well settled that a man has an insurable interest in his own life, and in that of his wife and children ; a woman in the life of her husband; and the creditor in the life of his debtor. Indeed, it may be said generally that any reasonable expectation of pecuniary benefit or advantage from the continued life of another creates an insurable interest in such life. And there is no doubt that a man may effect an insurance on his own life for the benefit of a relative or friend ; or two or more persons, on their joint lives, for the benefit of the survivor or survivors. The old tontines were based substantially on this principle, and their validity has never been called in question."

In the case of Loomis *v.* Eagle Life Ins. Co., 6 Gray, 399, Chief Justice Shaw, delivering an opinion which involved the question of insurable interest, used this language: "All, therefore, which it seems necessary to show, in order to take the case out of the objection of being a wager policy, is that the

insured has some interest in the life of the *cestui que viè*; that his temporal affairs, his just hopes and well-grounded expectations of support, of patronage, and advantage in life will be impaired; so that the real purpose is not a wager, but to secure such advantages, supposed to depend on the life of another; such, we suppose, would be sufficient to prevent it from being regarded as a mere wager. Whatever may be the nature of such interest, and whatever the amount insured, it can work no injury to the insurers, because the premium is proportioned to the amount; and whether the insurance be to a large or small amount, the premium is computed to be a precise equivalent for the risk taken. Perhaps it would be difficult to lay down any general rule as to the nature and amount of interest which the assured must have. One thing may be taken as settled, that every man has an interest in his own life to any amount in which he chooses to value it, and may insure it accordingly." In the case of Sabin *v.* Phinney, 134 N. Y. 423, it was held that a member of the Ancient Order of United Workmen of New York can legally direct the sum due at his death to be paid to a stranger who has no insurable interest in his life. The true rule, as we take it on the authority of a very large number of cases collected in a note to the case of Morrell *v.* Trenton Ins. Co., a Massachusetts case reported in 57 Am. Dec. 102, is, that one may insure his life and make the amount of the policy payable to whom he pleases, provided the contract is not made at the expense and for the benefit of the person designated as the beneficiary, as a cover for a mere wagering contract. In the same note authorities are cited for the proposition, "that the insurable interest which one has in his own life is what supports the policy in such a case." As laid down in Field's Lawyer's Briefs, § 417, the rule is that "Any person may insure his own life for the benefit of his creditors, relatives, friends, or even strangers. But if the insurance is effected by some other person, it is essential that he have a pecuniary interest in the life of the assured." To the same effect see Robinson *v.* U. S. Accident Association, 68 Fed. Rep. 825; 85 N. Y. 593; 38 Conn. 294; 51 Vt. 625. We think also that this court has recognized the doctrine for which we

are contending, in the case of *Equitable Life Assurance Society* v. *Paterson*, 41 *Ga.* 338, where McCay, J., declared that the law which prohibits the insurance of a life by another who has no interest in the continuance of that life is founded on a sound public policy, and that it was intended to prevent gaming policies and to avoid that inducement to crime which would exist if it were permitted. In the case then under consideration it appeared that a woman who contracted marriage had at the time a living husband, making, of course, the last contract of marriage void. While living together under such void marriage, the supposed husband procured a policy of insurance on his life in favor of the woman with whom he was then living. Payment of the policy was resisted on the ground that she had no insurable interest in the life of the person insured. This court there held that such a contract of insurance did not come within the reason of the law which prohibited gaming policies, nor was it open to the objection that it offered an inducement to crime. Judge McCay in his opinion, on this subject, said: "Though the marriage was illegal, yet in fact the woman had an interest, and a deep interest, in the life of the husband. He treated her as his wife. He supported her as such, she passed in society as such, and she was dependent upon him for support as such. It was the husband who in fact effected this policy. It was his own method of extending to this woman his assistance and protection, after he should himself be dead. Here is no gaming, since the very person whose life is insured is himself the actor in the transaction. So, too, as to the temptation to crime, offered to the beneficiary of the policy. It would seem, when the person whose life is insured is himself the actor in the matter, the amount of temptation held out to others to take his life, may, as a general rule at least, be left to his discretion." Further on in the same opinion, referring to the provision now found in our code which expressly permits the insured to direct the money to be paid to his assignee, he says, "and if he may do this, we do not see that an insurance effected by him, as the assured of another, for that other's benefit, is not equally good."

We have entered into the discussion of this case at length,

because of the fact, as stated in the outset, that the adjudicated cases are in conflict.   But we feel assured, both by reason and the long line of adjudicated cases to which only partial reference has been made, that the true rule which should obtain in such cases is, that where one obtains a contract of insurance on his own life and keeps up the same out of his own means, and directs the amount of the policy to be paid at his death to another whom from love, friendship, or any other reason he desires to benefit, the named beneficiary is entitled to recover on such contract, notwithstanding it may not be shown that he or she has any other insurable interest in the life of the deceased than exists in his good will and emanates from his expressed wish to benefit.   It is, after all, but a gift from him to one whose interests he desired to promote and whose welfare he wished to protect when he was dead.   Such a contract is in no sense a mere hazard, and is composed of none of the elements which make up a wagering policy, and it is only these that the law, mindful of the best interests of the citizen, prohibits.   There is, however, another view to be taken of the question which arises in this case.   Differences exist between contracts entered into under the plan of ordinary life-insurance and those made by benefit societies.   We only call attention, however, to those differences which exist in the selection of the beneficiary.   A contract entered into by a benefit society with a member is, of course, executory, and its terms and conditions are ordinarily manifested by the certificate of membership.   In addition to such, the charter of the society, its constitution and by-laws necessarily form a part of such contract. 29 Ohio St. 557; 94 N. Y. 580; 44 Md. 429.   The law which provides for the organization of a benefit society usually specifies the classes of persons who may be made beneficiaries of the insurance; and where the organic law of the society, or the charter procured from the State under that law, prescribes what classes of persons may become beneficiaries of its insurance, it is not in the power of the society or one of its members, or both, to enlarge or restrict these classes; for the society has no authority to create a fund for a person who does not belong to one of such classes, and the member has no right or power to

designate such person as his beneficiary. Niblack on Accident Insurance and Benefit Societies, § 158, citing 76 Mich. 146; 13 Bush (Ky.), 489; 146 Mass. 286. Under an act of the State of Michigan which authorized the organization of societies to secure to the family or heirs of any member upon his death a certain sum of money, it was held that no other person than a member of the family or an heir of the person insured could be made a beneficiary, and an old army comrade and intimate friend who had been designated by the member as the beneficiary could not take. Mutual Benefit Society *v.* Hoyt, 46 Mich. 473. A large number of adjudicated cases supporting this principle may be found in Bacon's Treatise on the Law of Benefit Societies and Life Insurance, § 237; and the reason which underlies the rule is, that the member of the society has under his contract no interest nor property in the benefit, but has simply the power to appoint some one to receive it. If, however, there is nothing in the charter or by-laws of the organization, nor in the statutes of the State, restricting the appointment, the member may designate whomsoever he pleases, and no one can question the right. 1 Bacon, Ben. Soc. § 246; Massey *v.* Mutual Relief Society, 102 N. Y. 523; Knights of Honor *v.* Watson (N. H.), 15 Atl. Rep. 125; Walton *v.* Odd Fellows Society, 42 Minn. 204.

In the present case, while it appears on the face of the certificate that the plaintiff in error is a Massachusetts corporation, none of the provisions of the charter appear in the record, nor any portion of its constitution or by-laws is set out, nor can it be now determined whether the contract of insurance is to be governed by the laws of the State of Massachusetts or by those of Georgia. Hence, no restriction of the power of the member to name the beneficiary is made to appear, and the certificate evidencing a contract of life-insurance similar to those entered into by mutual companies, the case will be determined under the general law applicable to insurance contracts. It is true that on the back of the certificate appears a condensation of certain explanations in which it is asserted that speculative risks will not be tolerated nor benefits paid to other than blood relatives or dependents. It does

not appear, however, unqualifiedly, as it is arranged, that it is one of the conditions referred to in the certificate, and without further explanation we are not able to say that it is. Therefore, so far as the record appears, there was nothing to restrict the designation of the beneficiary by Pughsly at the time he entered into the contract, and by the terms of the contract the benefit fund is made expressly payable to the defendant in error. Being so, and treating this contract as subject to the law which fixes the insurable interest of a beneficiary where the policy is taken out and maintained by the insured, no reason appears why the defendant in error was not entitled to maintain her action; and the judgment of the court below in overruling the demurrer is

*Affirmed. All the Justices concurring except*

LUMPKIN, P. J., dissenting. A policy of life-insurance naming as the beneficiary thereof one who has no insurable interest in the life of the insured is a wagering policy, and therefore void, although taken out by the insured at his own expense. Independently of adjudications rendered outside of this State, I am of the opinion that the question raised in this case is settled by section 2114 of the Civil Code, which reads as follows: "An insurance upon life is a contract by which the insurer, for a stipulated sum, engages to pay a certain amount of money if another dies within the time limited by the policy. The life may be that of the *assured*, or of another in whose continuance the *assured* has an interest." That is to say, the life insured may be that of the beneficiary named in the policy, or the life of another person in the continuance of which life the beneficiary has an insurable interest. "The beneficiary of an insurance policy may be defined as the party to whom the proceeds are made payable by the terms of the contract;" and "beneficiary" and "assured" are synonymous terms, though the former is the more commonly used. 3 Am. & Eng. Enc. L. (2d ed.) 926.

The question at issue was neither made in nor passed upon by this court in the case of *Equitable Life Assurance Society* v. *Paterson*, 41 *Ga.* 338. It is true the report of that case discloses that in the requests to charge, made by counsel for the defend-

ant, this question was presented to the trial judge for his determination; but the motion for a new trial, the denial of which was the only ruling excepted to, did not in the remotest manner invoke a decision of the question whether one can take out a valid policy of insurance on his own life for the benefit of a stranger; nor is any such question dealt with in the synopsis of the points decided, which, under our statute, is the official announcement of the decision rendered. Accordingly, the remarks of Judge McCay upon the subject of insurable interest should be treated as merely obiter and in no sense binding as authority.