## ANCIENT ORDER UNITED WORKMEN v. BROWN *et al.*

1. A member of a mutual insurance order may, when acting in good faith, legally designate, as the beneficiary in a certificate of life-insurance issued by the order, one who has no insurable interest in the life of the member, provided there be, at the time the certificate is issued, no restriction in the charter, constitution, or laws of the order, or in the statutes of the State, forbidding the right to appoint such a beneficiary. LUMPKIN, P. J., dissenting.

2. Although the application and certificate both stipulate that the right of the member to participate in the benefit fund is expressly conditioned upon his compliance with all the laws, regulations, and requirements which are or may be enacted by the order, a by-law enacted subsequently to the issuance of the certificate will be given a prospective operation, in the absence of a clear intent that it shall act retrospectively.

3. To render an insurance company liable for attorney's fees under the provisions of section 2140 of the Civil Code, a demand and a refusal to pay, sixty days before suit is brought, must be plainly averred and the truth of such averment must be established on the trial. No such demand and refusal being averred and proved in the present case, the recovery of attorney's fees was not authorized.

Argued December 5, 1900. — Decided January 24, 1901.

Equitable petition. Before Judge Spence. Dougherty superior court. January 15, 1900.

*D. H. Pope & Son,* for plaintiff in error.

*Hatcher & Carson, S. J. Jones,* and *Wooten & Crosland,* contra.

FISH, J. In November, 1879, Lodge No. 7 of Columbus, Ga., of the Ancient Order United Workmen, which was not a corporation, but a mutual beneficiary association, issued a certificate of membership insurance on the life of L. I. Harvey, in which Miss Adella T. White was named as the beneficiary. The application, signed by Harvey, upon which this certificate issued, recited that "I . . do hereby agree that compliance on my part with all the laws, regulations, and requirements which are or may be enacted by said Order is the express condition upon which I am to be entitled to participate in the Beneficiary Fund and have and enjoy all the other benefits and privileges of this Order." The certificate itself contained a similar stipulation. When the certificate was issued there was nothing in the laws of the order restricting the right of a member to designate in the certificate whomsoever he pleased as the beneficiary. In October, 1883, Harvey surrendered this certificate to the order, which cancelled the same, and had a new certificate issued in which, at his direction, Mrs. Georgia C. Brown, who was neither related to nor in any way dependent upon him, was designated as the beneficiary, her relation to Harvey being stated as that of "friend." This change of the beneficiary was made by Harvey in consideration of an agreement between him and Mrs. Brown that she would take the certificate in satisfaction of four months board, she agreeing to pay all future assessments made by

the association.     She received the new certificate upon this agreement, and paid all assessments made upon Harvey until his death, which occurred in August, 1898.     In 1890 the order adopted the following by-laws:

" 9. Beneficiaries.     Each member shall designate the person or persons to whom the Beneficiary Fund due at his death shall be paid, who shall, in every instance, be one or more members of his family, or some one related to him by blood or who shall be dependent upon him."

" 10.  Order of Payment to Beneficiaries.     If one or more of the beneficiaries shall die during the lifetime of the member, the surviving beneficiary or beneficiaries shall be entitled to the benefit equally, unless otherwise provided in the beneficiary certificate, and if all the beneficiaries shall die during the lifetime of the member, and he shall have made no other direction, the benefit shall be paid to his widow, if living at the time of his death; if he leave no widow surviving him, then said benefit shall be paid, share and share alike, to his children, his grandchildren, living at the time of his death, to take the share to which their deceased parents would be entitled if living; if there be no children or grandchildren of the deceased member living at the time of his death, then said benefit shall be paid to his mother if living, and if she be dead at the time of his death, then to his father if living, and should there be no one living at the death of the member entitled to said benefit under the provisions hereof, then the same shall revert to the beneficiary fund of the Grand Lodge."

Subsequently to the adoption of these by-laws, the grand recorder of the order gave Harvey written notice of the enactment of by-law No. 9, the notice further reciting:  "The records in this office show that there is quite a number of members in the Jurisdiction holding Beneficiary Certificates in which the direction of payment of the beneficiary fund is not in conformity with the laws above stated.     By a resolution adopted at the last session of the Grand Lodge each member holding such beneficiary certificate is required to surrender the same to the Grand Lodge in exchange for one which will conform to the laws of the order, and for which no charge will be made."     Harvey never complied with this request to change the beneficiary named in his certificate.     After the death of Harvey, Adella T. Leonard (formerly Adella T. White), the beneficiary named

in the first certificate issued to Harvey, brought an equitable action against the order and Mrs. Brown, claiming that by reason of the adoption of by-laws Nos. 9 and 10 in 1890, and the failure of Harvey to comply with by-law No. 9, the last certificate in which Mrs. Brown was named as the beneficiary was void, and that the petitioner was entitled to the benefit fund due on Harvey's certificate, by reason of the fact that she was the beneficiary named in the first certificate, and also because she was next of kin and sole heir of Harvey. She prayed for a recovery of the fund against the order, and that the order be enjoined from paying it to Mrs. Brown, and that Mrs. Brown be enjoined from suing the order and be required to litigate her rights in the suit filed by the plaintiff. Both the insurance order and Mrs. Brown answered, the former claiming that, under its by-laws and the facts of the case, the fund had reverted to it, and the latter, by way of cross-petition, setting up a claim to the fund as beneficiary under the last certificate issued to Harvey. By consent of all parties the case was tried by the judge without the intervention of a jury, upon an agreed statement of facts, from which the facts above stated are taken. The court rendered a judgment in favor of Mrs. Brown, against the insurance association, for $2,000, the amount due on the certificate, together with interest thereon, and $250 as attorney's fees, to which judgment the order excepted.

1. One of the contentions of the order is, that as Mrs. Brown had no insurable interest in the life of Harvey, the certificate of membership insurance in which she was named as beneficiary is a wagering policy, and therefore void. In our opinion, this contention is not sound. The point is covered by the ruling made in *Union Fraternal League* v. *Walton*, 109 *Ga.* 1, where it was held: "As one has an insurable interest in his own life, he may lawfully procure insurance thereon for the benefit of any other person whose interest he desires to promote." In the very able opinion of Mr. Justice Little, who spoke for the majority of the court, it is said: "One question only arises for determination under the record in this case; that is, whether a beneficiary, named by a member of a fraternal or benevolent association which provides for life-insurance, is entitled, after the death of such member, to recover the amount of the benefit without showing any insurable interest in the life of the deceased. The contention of the plaintiff in error is that the

contract under consideration must be governed by the principles of law applicable to ordinary contracts of life-insurance, and the legal proposition is submitted that a policy in favor of one who has no insurable interest is void, as it is a wager contract and against public policy. We can not assent to the correctness of this proposition." In construing the last paragraph of section 2114 of the Civil Code, which is in the following words: "The life may be that of the assured, or of another in whose continuance the assured has an interest," the learned Justice said: "Taken together, the meaning of the section is, that one may insure his own life without qualification; that he may not insure the life of another unless he has an interest in the continuance of the life of that other. Necessarily, in the first instance, the amount of the policy is to be paid to some one other than the insured, because ordinarily under the contract the amount is not payable until his death." Section 2116 of the Civil Code provides: "The assured may direct the money to be paid to his personal representative, or to his widow, or to his children, or to his assignee; and upon such direction given and assented to by the insurer, no other person can defeat the same. But the assignment is good without such assent." The opinion of the majority of the court in the case cited is strongly fortified by abundant authority cited by Justice Little. It is true that in that case the assessments were kept up by the assured, while in the case in hand the assessments becoming due after the benefit fund was made payable to Mrs. Brown were to be paid by her, the beneficiary. We are unable to see, however, why that difference should alter the principle underlying the conclusion reached by the majority of the court in *Union Fraternal League* v. *Walton*. The public policy which prevents one person from insuring the life of another in whose life he has no insurable interest is based upon the presumption that a temptation would be held out to the one taking out the policy to hasten, by improper means, the time when he should receive the amount of the insurance named in the policy. Such temptation would be as strong, we think, in a case where the assured took out a policy upon his own life for the benefit of one having no interest therein, and was to keep up the premiums or assessments, as it would be where the premiums or assessments were to be paid by the beneficiary. Indeed, the temptation to hasten the death of the assured might be stronger where the assessments

were to be paid by him than where they were to be paid by the beneficiary; for the reason that the beneficiary could not be certain that the assured would continue to pay the assessments.     But be that as it may, the temptation generally would be to hasten the time for the payment of the insurance, rather than to avoid the payment of premiums or assessments.     In *Union Fraternal League* v. *Walton*, supra, it was held, that if, at the time the contract of insurance was entered into by a benefit society with a member, nothing existed in the statutes of the State, or in the charter and laws of the society, restricting the right of a member to appoint a beneficiary to receive the benefit fund, the member could legally designate whomsoever he pleased as the beneficiary.     From what we have already said, we think there was nothing in the statutes of the State to prevent Harvey from naming Mrs. Brown as the bene-' ficiary in the certificate which is the foundation of her claim against the insurance order.     It was admitted upon the trial, in the agreed statement of facts, that at the time the certificate was issued there was no law of the order placing any restriction upon Harvey as to such right of appointment, and there was no pretence that he did not have the certificate issued in good faith.

2. Another question presented is, whether by-law number 9, adopted in 1890, seven years after the certificate was issued naming Mrs. Brown as the beneficiary, was retroactive, so as to require Harvey to change the beneficiary, by substituting for Mrs. Brown a member of his family, or some one related to him by blood, or who was dependent upon him.     It is a well-recognized rule, in the construction of statutes, that a legislative enactment will be given a prospective operation only, in the absence of a clear intent that it shall act retrospectively.     Endlich, Interp. Sts. § 273; Dwarris on Sts. 681.     It is not enough that general terms are employed broad enough to cover past transactions, for laws are to be construed as prospective only, if possible.     Sedg. Cons. St. & Con. Law, 161, note a.     "Retroactive by-laws are regarded as impolitic and unwise, and they may often be said to be unjust and oppressive. Although they may in a given case be valid, they will always be subjected to such a construction as will circumscribe their operation within the narrowest possible limits, consistent with the manifest intention of the society as indicated by the language used. When it can be avoided they will not be permitted to destroy the

validity of a certificate and to deprive a person of all rights under it." Nibl. Acc. Ins. & Benf. Soc. § 27. The exact question under consideration was decided in Wist v. Grand Lodge A. O. U. W., 22 Ore. 271. In that case this same order issued a certificate to one Freeman, in which his wife, Anna Freeman, was designated as beneficiary, but when she ceased to be his wife he surrendered that certificate and took a second certificate in which he designated Philip Wist as his beneficiary. Freeman's application upon which the certificate issued contained a stipulation in language identical with that set out in the application of Harvey in the present case. Subsequently to the issuance of the certificate in which Wist was named as beneficiary, the society changed its law relating to the classes of persons who could be designated as beneficiaries, by adopting a by-law in the exact language of by-law number 9, adopted by the defendant order in this case in 1890. In that case, as in the present, the grand recorder of the order notified the assured of the change in the law relative to beneficiaries. Freeman never changed his last-mentioned benefit certificate after it was issued to him. Wist was not a member of his family, nor related to him by blood, nor dependent upon him. It was contended on the part of the order, that the by-law changing the classes of persons who might be designated as beneficiaries was retroactive, and was intended to annul the appointment of beneficiaries, previously made, who did not belong to the classes specified in it, and that the contract of a member was to comply with and be bound by laws of future enactment as if they already existed. But it was held, that the language of such by-law was wholly prospective in its operation, affecting the power to appoint beneficiaries after it was passed; that it applied to new members, of course, but only to such old members as changed their beneficiaries after its passage. See also Hedger v. Rennaker, 3 Metc. (Ky.) 258; Benton v. Brotherhood of Railroad Brakemen (Ill.), 34 N. E. Rep. 939.

The fact that Harvey agreed to comply with all the laws, regulations, and requirements which might be enacted by the order subsequently to the issuance of his certificate does not alter the rule that they should be given a prospective operation, in the absence of a clear intent that they shall act retrospectively. Northwestern Ass'n v. Wanner, 24 Ill. App. 359; Supreme Commandery v. Ainsworth, 71 Ala. 436; Hobbs v. Association, 82 Iowa, 107; Morri-

son v. Insurance Co., 59 Wis. 165; Hutchinson v. Supreme Tent, 22 N. Y. Suppl. 801; Bowie v. Grand Lodge, 99 Cal. 392; Hogan v. League, Ib. 248; Stohr v. Society, 82 Ib. 557; Montgomery Ins. Co. v. Milner (Iowa), 57 N. W. Rep. 612.

By-law number 9, requiring that beneficiaries should be related by blood to the assured or dependent upon him, did not, either in terms or by necessary implication, abrogate or annul designations of beneficiaries already made in conformity with rules existing at the time their certificates were issued. There is nothing in such by-law requiring any member to make a change of his beneficiary, or, in case of his failure to do so, that his benefit certificate should revert to the society. If the intention of the order was to make such by-law retroactive, language to clearly express such intention could have been easily employed. The notice given by the grand recorder to Harvey, that the grand lodge had passed a resolution requiring members holding benefit certificates which did not conform to rule 9 to surrender them and obtain certificates conforming to such rule, is not sufficient to prove that such a resolution was, in fact, passed by the grand lodge. It is unnecessary to consider what the effect of such a resolution would have been, because there is nothing in the evidence in this case to show that it was passed by the grand lodge. The written notice to Harvey that it had been passed could not, when produced by the order in court upon the trial of this case, prove that such a resolution was adopted. The passage of a resolution is one thing, and the service of notice of its passage is another and a different thing. Whether, in view of Harvey's agreement, the order could have legally enacted a by-law, subsequently to the issuance of his certificate, requiring him to change the beneficiary therein, is a question unnecessary, under the facts of this case, to be decided. All that we rule upon the subject is that the by-law adopted subsequently to the issuance of his certificate did not require a change of the beneficiary, because it does not appear, from the terms of such by-law, that it was intended to have such effect.

3. We think the judgment against the order for attorneys' fees was erroneous. They were claimed under section 2140 of the Civil Code. To render an insurance company liable for attorneys' fees under the provisions of that section, a demand for the amount due on the policy and a refusal to pay, sixty days before suit was brought,

must be plainly averred, and the truth of such averment must be established on the trial. No such averment was plainly made in the cross-petition of Mrs. Brown, nor was there anything in the agreed statement of facts, upon which the case was tried, which showed that any demand and refusal had been made. Consequently the judgment for attorneys' fees can not stand in this case. *Lester* v. *Insurance Co.*, 55 *Ga.* 475. An appropriate order will, therefore, be entered that the judgment for attorneys' fees be remitted.

*Judgment affirmed, with direction. All the Justices concurring, except*

LUMPKIN, P. J., dissenting. I do not think this case is controlled by the decision in the case of *Union Fraternal League* v. *Walton*, 109 *Ga.* 1. There, the entire cost of maintaining the insurance was borne by the person at whose instance the benefit certificate was issued. Here, Mrs. Brown, who had no insurable interest in Harvey's life, purchased the certificate and kept it in force at her own expense. If this did not make a wagering contract, pure and simple, and such as our law forbids, I am at a loss to conceive what would. But, even upon the assumption that the two cases are in principle identical, I can not assent to the judgment rendered by the majority. My reasons for taking this position will be gathered from the brief dissenting opinion which I filed in the *Walton* case.