Morgan, J.
Judgment was entered in the district court of the City and County of .Denver in favor of the plaintiff, Mrs. Irish, against the defendant, The Head Camp, Pacific jurisdiction, Woodmen of the World, in an action upon a benefit certificate for $3,000, issued to plaintiff’s husband, naming her as beneficiary. The action was tried before *87 the court, without a jury, upon an agreed statement of facts. It is a very pleasant surprise to find no controversy over the pleadings or the facts, and that the divergent views of the law are such as to justify an appeal. The appellant association asks a reversal on the ground that the beneficiary was not entitled to more than 70 per cent of the amount named in the certificate, as provided in a by-law adopted some years after the certificate was issued. The insured, at the time he received the certificate, and up to the date of his death, was a mining engineer; and when the certificate was issued, such occupation was not included in the by-laws of the association as an extra hazard; but appellant contends that a by-law was adopted, some time afterward, that classed such occupation as extra hazardous, and provided that a member of the order following such occupation should either pay 20 cents additional on his assessments, for every $1,000 of his insurance, or submit to a reduction of the amount named in the certificate as above mentioned; and contends that the insured should have paid the 20 cents additional after the passage of such by-law, and in the event he failed to do so, that his beneficiary would not be entitled to receive more than 70 per cent of the face value of the certificate. The insured never paid the additional 20 cents. There are two propositions of law involved in the consideration of this by-law: First, was it intended. to be retroactive; second, is it sufficiently definite in its language to include such occupation. There are several other propositions arising that might be decided, but it would require a very lengthy opinion, and endless consideration of conflicting authorities, and as the judgment may be affirmed on either one of the foregoing propositions, those two only will be considered.
First, it was not intended to be retroactive. The insured w;as a mining engineer when! the certificate was issued, and it was so stated in his application. There was *88 no provision in the constitution or by-laws, or the certificate, at that time, making such occupation an extra hazard. It is conceded that, in the event of the death of the insured, at any time before the by-law was adopted, his beneficiary would have been entitled to the full amount named in the certificate. The assessments were paid as provided in the certificate the same after the by-law was adopted as before; but after the death of the insured, which occurred about four years after the adoption of the by-law, the association refused to pay more than 70 per cent of the face of the certificate, relying upon the by-law aforesaid as a basis for its refusal. Afterwards the 70 per cent was accepted, with the understanding, however, that this action might be brought for the balance.
Appellant contends that, as the certificate provides that the payment of the $3,000 was “subject to all conditions named in this certificate and named in its fundamental laws, and liable to forfeiture if said member shall not comply with said conditions, laws, and such by-laws and rules as are or may be adopted by the head camp, or the local camp of which he is a member,” and as. the assured never paid the additional 20 cents, he is presumed to have accepted the option provided in the by-law as to the 70 per cent of the face value of the certificate.
In a case like this, where the certificate sued upon 'contains such a clause, the insured is bound by any reasonable by-law thereafter legally adopted, Head Camp, Pac. Juris., Woodmen of the World, v. Woods, 34 Colo., 1, subject to the settled rule of construction, that'it will not be given a retroactive force unless such intention is clearly disclosed by the terms thereof. The question, therefore, to be considered is, was the by-law intended to have such retroactive force as would require the assured to accept either one of the options provided. A. O. U. W. *89 v. Brown, 112 Ga., 545 (37 S. E., 890); Wist v. Grand Lodge, 22 Ore., 271 (29 Pac., 610).
On this proposition, Mr. Niblaclc, in his work on Benefit Societies, etc., in section 27, pages 64 and 65, states the rule as follows:
“Members may contract with reference to laws of future enactment, — may ag’ree to be bound by any future by-laws or amendments which may be passed by the society, as if they were existing at the date of the contract. They may consent that new by-laws or amendments shall enter into and form parts of their contracts, modifying or varying them. But the fact that a member has consented to be bound by future laws or amendments does not alter the rule that they will be given a prospective operation in the absence of a clear intent that they shall act retrospectively.
“Retroactive by-laws are regarded as impolitic and unwise, and they may often be said to be unjust and oppressive. Although they may in a given case be valid, they will always be subjected to such construction as will circumscribe their operation within the narrowest possible limits, consistent with the manifest intention of the society as indicated by the language used. ’ ’
Mr. Bacon, in his work, in section 187, states the rule in the same manner, to-wit:
“It is a settled rule of construction that laws will not be interpreted to be retrospective unless by their terms it is clearly intended to be so. They are construed as operating only on cases or facts which come into existence after the laws were passed. ‘ Every statute, ’ it has been said, ‘which take's away or impairs vested rights, acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect of transactions or considerations already passed, must be presumed, out of respect to the legislature, to be *90 intended not to have a retroactive operation.’ Eights will not be interfered with unless there are express words to that effect. It is not enough that upon some principles of interpretation a retroactive construction could be given to the law, but the intent to make it retroactive must be so plain and demonstrable as to exclude its prospective operation. £It is not enough that general terms are employed, broad enough to cover past transactions,’ for laws ‘are to be construed-as prospective only,’ if possible. In fact, so great is the disfavor in which such laws are held, and.so generally are they condemned by the courts, that they will not construe any law, no matter how positive in its terms, as intended to interfere with existing contracts or vested rights, unless the intention that it shall so operate is expressly declared or it is to be necessarily implied.”
The by-law in controversy, when first adopted in 1899, and as set forth in section 103 thereof, begins as follows: “Any person to become a benefit member * * * must, at the time of introduction, possess the following qualifications,” and then goes on to state such matters as, it is contended, bring the occupation of a mining engineer, in which the insured was engaged at the time the certificate was issued to him, within a class of vocations that requires the payment of the 20 cents on the thousand' heretofore referred to; or, in the event of his failure to do so, making his beneficiary entitled to only 70 per cent of the. face value of the certificate. The use of the words “to become a benefit member,” even under a literal construction thereof, would not include the insured in this action. The courts, however, give such construction to contracts of insurance as will favor the insured, and against the company that prepares the contracts. The insured was a mining engineer and was already a member of the association, and had been paying his dues in accordance with his certificate for a period of *91 about five years. Even if he knew that such amendment or by-law had been adopted, and had examined the same and read the clause above referred to, he would not have known that it referred to him, because the language thereof refers to future members, those “to become” members.
This by-law contains the following additional clause: “Any benefit member properly introduced and receiving his benefit certificate, who while in good standing shall engage in any of the prohibited vocations mentioned in section 103- * * * shall, notwithstanding, be permitted to retain his benefit certificate while so engaged, upon the following conditions, ’ ’ etc. The use of the words just quoted, when construed according to the rules for construction above referred to, would not include a member holding a certificate who was already engaged in any particular vocation, and who was engaged in such vocation at the time he became a member and at the time the certificate was issued to him. The words indicate futurity, and were evidently intended to include members who should change their vocation and engage in one of the prohibited vocations. If the head camp intended that this by-law should be retrospective in its character, it would not have used the words “to become” and “shall engage,” and, if it did so intend, it should have used different words, as the words that are used will not admit of such retrospective construction as to include the insured within such meaning.
In the ease of Modern Woodmen of America v. Wieland, 109 Ill. App., 340, 347, the court had under consideration a by-law containing the following provision:
“If, after a person has become a member of this fraternity, he engages in any of the employments or occupations herein enumerated, his benefit shall be forfeited by such act, and the certificate shall be null and void, ’ ’ and used tlie following language in reference thereto:
*92 ‘ ‘ The by-laws of 1895 do not expressly say that if a member who has engaged in any of the specific occupations at a time when the laws of the order permitted him to do so, shall continue in such occupation after the adoption of that by-law, his benefit certificate shall be forfeited by such continuance therein, and shall become null and void. The language of the by-law literally construed applies only to persons who enter upon such occupation after the adoption of that by-law. * * * It is a general rule of law that such enactments are to be given only a prospective operation.”
The opinion then quotes the following from Niblack on Benefit Societies, section 26:
‘ ‘ Ordinarily, by-laws operate prospectively only, and it will be presumed that they are not intended to affect contracts already entered into. A member may know that certain amendments to the by-laws have been passed, or he may even vote for them, but it does not follow from this that he consents that they may have a retroactive force and may modify a contract which he holds with the society.”
See also Grand Lodge, A. O. U. W., v. Haddock, 1 L. R. A. (N. S.), 1064.
The insured stated in his application for the certificate issued to him that he was a mining engineer. He continued to follow that occupation up to the time of his death, and paid all of his assessments in accordance with the terms of that certificate. At the time the certificate was issued to him, there was nothing in the by-laws that made the occupation of mining engineer any more hazardous than any other occupation, and up to the time the bylaw was adopted, even under the contention of appellant, he was upon an equal footing with all other members of the association not included in the hazardous classes enumerated in the by-laws then adopted, and if it was attempted by this by-law to put him in a hazardous class *93 and require him to pay an additional amount or subject his beneficiary to the necessity of accepting 70 per cent of the face value of the certificate, the by-laws should have stated these facts in plain and unequivocal language, so that he could understand it.
The views hereinbefore expressed do not disturb the law as announced nor the conclusions reached in the case of Head Camp, Pac. Juris., Woodmen of the World, v. Woods, 34 Colo., 1. In the latter case the insured was not engaged in the occupation of “railway brakeman” when his certificate was issued. The by-laws at that time classed railway brakemen as an extra hazard, and did not permit certificates to be issued to persons engaged in such work. The insured engaged in it after his certificate was issued, and after the by-law was adopted, and he was clearly within its provisions providing that members who shall engage in such work, in order to continue in such work shall pay an additional amount on each assessment. Such by-law affected all members alike, as stated in the opinion, and was not retroactive as to him, and was not sufficiently unfair or unreasonable, for any other reason, to make it void. In the present case the insured was introduced and received his certificate while he was a mining engineer. The by-laws did not forbid it, and he continued as such until his death. The by-law under consideration was adopted about nine years after the certificate was issued, and even when it was adopted its language was not sufficiently clear to include a member that was already engaged in the prohibited occupation. The law announced in the Woods case, so far as it involves the question now under consideration in the present case, is as follows:
“No case has been called to our attention that holds that, under a contract in terms recognizing the right of change in the laws of a mutual benefit society, it cannot, for the common good of all the members, enact legisla *94 tion applying to all alike, whereby the requirements of good standing may be made more onerous than they were when the benefit certificate was issued.”
The words “for the common good of all the members,” and “applying to all alike,” show a clear distinction between that case and the present case.
Second: Is the by-law sufficiently definite in its provisions to include, within the extra hazardous classes named in this by-law, the occupation of “mining engineer ’ ’ in which the insured was engaged when the certificate was issued? This by-law, when first adopted in 1898, changed the by-laws in force at the time the insured received his certificate, so as to include among the hazardous classes, in addition to those enumerated in the original by-laws, “all persons whose duties require them to enter mines at any time,” and when amended in 1900 and 1902, the words above quoted remained about the same, to-wit, “all persons engaged about mines, whose duties require them to- enter into mines at any time. ’ ’ The latter amendment introduced the two options included therein, to pay 20 cents additional on the thousand on each assessment, or to accept 70 per cent of the face value of the certificate in order to engage in such prohibited vocation. The term “mining engineer” is not used in it, nor is it used in any of the previous laws, nor in the certificate. The association knew, when this bylaw was adopted and when it was amended, that the insured was a mining engineer; evidently knew the usual duties of mining engineers, as counsel for appellant states in his brief, that the insured “was accepted by the order in its earliest days and when it had not been made to appear that the occupation of mining engineer was one of extra hazard; but thereafter and by reason of more frequent casualties from that occupation, it became apparent * * * that such members should be required to. make an additional payment in order to claim the full *95 amount of benefits and to provide against the hazard incurred in such occupation.” Knowing the hazardous character of the occupation of mining engineers, it seems strange that the head camp did not use that term in referring to “persons engaged about mines whose duties require them to enter into mines at any time.” There was no hesitation in using the terms “railway engineer,” “railway freight brakeman,” “saloon keeper,” etc. If, as appellant’s counsel contends, that, by reason of more frequent casualties arising from that occupation, this bylaw became necessary, then the association well knew that the vocation of mining engineer was a well-known vocation, the same as that of railway brakeman, fireman, railway engineer, and other vocations named, and if it was intended to include mining engineers, it seems strange that the association should confine its language to “persons engaged about mines whose duties require them to enter into mines at any time” and not mention mining engineers. If the words “mining engineer” had been used in the by-law, it would be at least as plain as where the words “railway brakeman” and “railway engineer” are used, and there would not be any doubt as to the occupation referred to.
Furthermore, the language used in the by-law, in another paragraph, wherein it is provided that a member must choose one of the two aforesaid options, indicates that mining engineers were not included, nor even “persons engaged about mines whose duties require them to enter into mines at any time.” The by-law in this respect is as follows:
“Sec. 103. Any person to become a benefit member of any camp, must, at the time of introduction, .possess the following qualifications:
“First. He must be a white male, twenty-one years old, who has not .passed the forty-fifth anniversary of his birthday.
*96 “Second. He must be of sound bodily health and mind, capable of passing a rigid medical examination, without concealing any fact connected with family history or physical condition which would affect his risk; of good moral character,- not engaged in any disreputable or unlawful vocation, and receive favorable ballot of a camp at a regular meeting.
“Third. He must not be engaged in any of the following vocations or employments, viz: Railway freight brakeman, including brakeman on a mixed train of freight and passenger cars, railway engineer, fireman or switch-man, miner, including placer miners engaged in drifting underground, and all persons engaged about mines, whose duties require them to enter into mines at any time, employes in factory producing explosive materials, etc.”
“Sec. 105. Any benefit member properly introduced and receiving his benefit certificate, who, while in good standing, shall engage in any of the prohibited vocations mentioned, * * * shall, notwithstanding, be permitted to retain his benefit membership while so engaged on the following conditions and not otherwise, viz: If a member engages in a prohibited vocation and whose death by accident or disease occasioned by or resulting from such hazardous occupation, his beneficiary shall receive, as per the following schedule:
“Class A. Those employed in factories producing explosives, vitriol makers, well diggers, coal miners, balloonists, placer miners engaged in drifting underground, plow grinder and brass worker.
“Class B. Railway freight brakeman, including brakeman on mixed train of freight and passenger cars, engineer, fireman and switchman. His beneficiary shall receive sixty per cent of the face value of his certificate.
“Class C. Persons working underground in quartz, copper, gold or silver mines, not including placer miners *97 when drifting underground. His beneficiary shall receive seventy per cent of the face value of his certificate.
“All others, as now specified in the constitution in sections 102 (103 above) and 105 shall receive seventy-five per cent of the face value of certificate held by them, provided they are in good standing upon the hooks of the head camp at the time of death.
“And provided, further, that should any member in good standing die from other causes than those resulting from or occasioned by reason of such prohibited vocations, his beneficiary shall receive full face value of such certificate.
“Provided, however, that in case any beneficiary member belonging to the order Oct. 1, 1902, engaged in such hazardous vocation, who shall elect so to do, may pay an extra rate as follows:
“Those mentioned in class ‘A’ shall pay $1 extra.
“Those mentioned in class ‘B’ shall pay fifty cents extra, and those mentioned in class ‘O’ shall pay twenty cents extra.
“Then and not otherwise his beneficiary shall receive the full amount of his certificate.
“No suspended member can be reinstated when engaged in said prohibited vocations.”
If the insured had read the foregoing by-laws, to which class would he have concluded that he belonged, if any? Would he not have been justified in not only having considerable doubt in regard to the matter, but in concluding that he did not belong to any one of the classes named, and that it was not intended that the by-law should refer to him or affect his certificate of insurance?
The appellant contends that the insured comes within class “0,” hut class “O” includes only “persons working underground; ’ ’ this would not include a mining engineer, nor “persons engaged about mines whose duties re *98 quire them to enter mines at any time,” because these two classes are different from persons working underground. Persons working underground would include laborers, miners, and other persons not included in some other class, while a mining engineer or person engaged about mines whose duties require him to enter mines at any time, would not certainly be classed with persons who work underground regularly. And even if a mining engineer should be considered as belonging to this class who are engaged about mines and whose duties require them to enter mines at any time, it still remains clear that the persons described in class “C” are different persons from a mining engineer and from persons engaged about mines, etc. There is a vast difference between persons who work underground regularly and those engaged about mines whose duties require them to enter mines at any time. And even if there be not a vast difference, the language is certainly very vague, ambiguous, uncertain and misleading, and should receive a construction that is most favorable to the rights of the member as well as the benevolent objects of the order. The avowed objects of this association are of a fraternal and beneficial character, and to provide and maintain, by means of assess•ments on its members, a benefit fund to be paid to relatives or dependents upon each deceased member, and other fraternal and benevolent purposes. Mr. Niblack, in his work on benefit societies, on page 32, in regard to what construction should be given the by-laws of mutual benefit societies, says, ‘ ‘ The by-laws of mutual benefit societies should be construed liberally, and with a view to effectuate the benevolent purpose of their organization. Where there is any ambiguity or inconsistency in the terms of such by-laws, that construction should be given to them which is most favorable to the rights of the member.” And again, on page 625, he says, “In actions on certificates of membership issued by mutual benefit so *99 cieties designed to secure the payment of money to those dependent upon their members, after the death of such members, courts should construe the rules 'and regulations of such societies' liberally to effect the benevolent objects of.their organization.” Mr. Bacon, in his work, in section' 179, says: “It is also a rule of construction that where the language used is ambiguous or inaccurate, and susceptible of two interpretations, it shall be construed most favorably to the promisee in the obligation; ’ ’ and again, in the same section, he says, “It is also a familiar rule of law, that if it be left in doubt, in view of the general tenor of the instrument and the relations of the contracting parties, whether given words were used in an enlarged or restricted sense, other things being equal, that construction should be adopted which is most beneficial to the promisee;” and again, in the same section, he says, “Contracts of insurance, because they have indemnity for their object, are to be construed liberally, so as to give them effect, if possible. If the policy contains two provisions, one favorable to the assured and one unfavorable, they being inconsistent and contradictory, that provision most favorable to the assured will be accepted and the other disregarded. Only a stern legal necessity will induce such a construction as will nullify the contract.”
There are numerous decisions of this court and of our supreme court holding that, where an insurance policy is prepared by the party to be held liable under it, or where it contains doubtful provisions, or where a clause is susceptible of two constructions, that construction will be adopted which is most favorable to the insured. Atlantic Ins. Co. v. Manning, 3 Colo., 224; State Ins. Co. v. Horner, 14 Colo., 391; German Ins. Co. v. Hayden, 21 Colo., 127; Strauss v. Phoenix Ins. Co., 9 Colo. App., 386; Lampkin v. Travelers Ins. Co., 11 Colo. App., 249.
And that certificates of insurance of benevolent associations should be interpreted the same as those of a *100 mutual life insurance company, Chartrand v. Brace, 16 Colo., 19; Sup. Lodge, Knights of Honor, v. Davis, 26 Colo., 252.
And that “it is also an inflexible rule that a policy of insurance must be liberally construed in favor -of the insured so as not to defeat, without a clear necessity, the claim to indemnity which in making the contract it was his object to secure.” Northwestern Life Ins. Co. v. Tietze, 16 Colo. App., 205, 210.
The conclusion is, therefore, that the by-law under consideration is not, and was not intended to be, retroactive, and does not, and was not intended to, apply to certificates already issued; and, furthermore, that the language used by which, it is contended, the occupation of mining engineer is placed in the extra hazardous class, is ambiguous and of doubtful application, as to including mining engineers within the exceptions and classifications, and should be construed against the appellant in this instance.
For these reasons, the judgment is affirmed.

Judgment Affirmed.