5749.   CHEROKEE LIFE INSURANCE CO. *v.* BANKS.

The holder of a policy of insurance on his own life may assign the policy
to a person who has no insurable interest in the life insured, if the as-
signment is made in good faith and not as a mere colorable evasion of the
law in regard to wagering contracts.

DECIDED AUGUST 22, 1914.

Action on insurance policy; from city court of Brunswick—Judge
Krauss.   November 10, 1913.

Ben Banks, his wife, her son-in-law, Henry Wilson and Wilson's
wife and "small" son, Johnnie Wilson, lived in the same house.   In
April, 1912, Banks, his wife, and Henry Wilson each applied for
life insurance in the National Assurance Company of Atlanta,
Georgia.   The policy issued to Wilson was for $255, and was made
payable to his son Johnnie.   Wilson paid the premiums on it of
15 cents weekly "until he got tired and wanted to put it down,"
and he then told Banks that Banks could have Johnnie Wilson's
name removed from the policy and his own inserted instead, if
Banks would pay the future premiums.   Wilson signed a request to
the company that this change be made, and it was done, and within
a few weeks thereafter he died.   At the time of his death, November
3, 1912, Wilson and Banks and their families still resided in the
same house.   The policy recites that the relationship of the ben-
eficiary, Ben Banks, to the insured is that of a brother-in-law, though
it appears from the record that Wilson was in fact the stepson-in-
law of Banks.   Before the death of the insured the Cherokee Life
Insurance Company took over the business of the National Assur-
ance Company and assumed its liabilities, and attached to his policy
an agreement, duly signed by its president and secretary, in which
it assumed all liability under the policy and guaranteed the payment
of the benefit named therein.   Death proofs were made by Banks,
and the policy was delivered to the defendant's agent and remained
in the possession of the defendant until about February 1, 1913,
when it was returned to Banks or his attorney.   On January 14
the defendant, through its attorneys at law, formally declined, by
letter addressed to the plaintiff's attorney, to pay any amount on
the policy.   Thereafter Banks filed suit, setting out the facts stated
above, and the defendant interposed a plea denying liability, and
later, by amendment, set up that the policy was "a wagering con-
tract, against public policy, and void, for the reason that Ben Banks,

the beneficiary therein named, had and has no insurable interest in the life of the insured, Henry Wilson, either as relative, creditor, or otherwise." In the amendment it was stated that the insured had paid in premiums the sum of $4.20 since the issuance of the policy, and that this sum was paid into the court by the defendant, to be returned to such person or persons as might be entitled to it. The evidence sustained the plaintiff's allegations, and the court directed a verdict in his favor for $255. The defendant's motion for a new trial was overruled, and it excepted.

*Eustace C. Butts, Barry Wright,* for plaintiff in error.

*J. T. Powell, Francis H. Harris;* contra.

WADE, J. (After stating the foregoing facts.) It appears from the record and from the briefs of counsel that the sole question to be determined is whether the plaintiff was entitled to recover as assignee of a life-insurance policy originally issued to the insured and on his application, and on which the first premium and a number of succeeding premiums were paid by the insured himself, and in which originally the son of the insured was named as the beneficiary, but afterwards the plaintiff's name was substituted as beneficiary, at the suggestion of the insured and by his request, and with the approval of the insurance company, upon the understanding with the plaintiff that he might have his name substituted as beneficiary, if he would pay the future premiums on the policy; the only relationship between the insured and the plaintiff being that the insured was the plaintiff's stepson-in-law.

"That one has an unlimited insurable interest in his own life is an elementary principle, as to the existence of which the cases are unanimous. It follows, therefore, that one may take out a policy of insurance on his own life and make it payable to whom he will. It is not necessary that the person for whose benefit it is taken should have an insurable interest." 1 Cooley's Briefs on Insurance, 252, citing a large number of cases, among which is *Union Fraternal League* v. *Walton,* 109 *Ga.* 1 (34 S. E. 317, 46 L. R. A. 424, 77 Am. St. R. 350). As was said in that case, "While a valid contract of insurance can not lawfully be taken on the life of another by one who has no insurable interest therein, because it contravenes public policy, yet, as one has an insurable interest in his own life, he may lawfully procure insurance thereon for the benefit of any other person whose interest he desires to promote. Such a contract can

not be defeated because of the want of insurable interest in the beneficiary, when it appears that the person whose life was insured acted for himself, at his own expense and in good faith, to promote the interest of the beneficiary, in taking out the policy." In *Grand Lodge* v. *Barnard, 9 Ga. App.* 79 (70 S. E. 678), it was said: "An insurable interest is not necessarily dependent upon material relation or kinship by affinity or consanguinity. In a broad sense it may be said that any one has an insurable interest in the life of another where the latter feels sufficient interest in his welfare, for any reason, either to substantially assist him during his life, or to make him a gift after death, which he perhaps may not be able to do during life." In *Ancient Order United Workmen* v. *Brown,* 112 *Ga.* 545 (37 S. E. 890), it appeared that a mutual beneficiary association issued a certificate on the life of Harvey, in which Miss White was named as the beneficiary. Afterwards he surrendered this certificate to the order, which cancelled it and issued a new certificate by his direction, naming as the beneficiary one Mrs. Brown, who was neither related to Mr. Harvey nor dependent upon him. The change of beneficiary was made by Harvey in consideration of an agreement between Mrs. Brown and himself that she would accept the certificate in satisfaction of four months' board that he owed her, and that all future assessments made by the association should be paid for by her; and, upon this agreement, she received a new certificate; in which her relationship to Harvey was stated to be merely that of "friend," and thereafter she paid all such assessments until his death. In an action by her to recover the amount due on the certificate, the insurance order contended that since she had no insurable interest in the life of Harvey, the certificate in which she was named as beneficiary was a wagering policy, and therefore void. A majority of the Supreme Court held that this point was covered by the ruling made in *Union Fraternal League* v. *Walton,* supra; and in the opinion delivered for the majority it was said: "It is true that in that case the assessments were kept up by the assured, while in the case in hand the assessments becoming due after the benefit fund was made payable to Mrs. Brown were to be paid by her, the beneficiary. We are unable to see, however, why that difference should alter the principle underlying the conclusion reached by the majority of the court in *Union Fraternal League* v. *Walton.* The public policy which pre-

vents one person from insuring the life of another in whose life he has no insurable interest is based upon the presumption that a temptation would be held out to the one taking out the policy to hasten, by improper means, the time when he should receive the amount of the insurance named in the policy. Such temptation would be as strong, we think, in a case where the assured took out a policy upon his own life for the benefit of one having no interest therein, and was to keep up the premiums or assessments, as it would be where the premiums or assessments were to be paid by the beneficiary. Indeed, the temptation to hasten the death of the assured might be stronger where the assessments were to be paid by him than where they were to be paid by the beneficiary; for the reason that the beneficiary could not be certain that the assured would continue to pay the assessments. But be that as it may, the temptation generally would be to hasten the time for the payment of the insurance, rather than to avoid the payment of premiums or assessments." See also in this connection *Rylander* v. *Allen,* 125 *Ga.* 206 (53 S. E. 1032, 6 L. R. A. (N. S.) 128, 5 Ann. Cas. 355), in which the case of *Quillian* v. *Johnson,* 122 *Ga.* 49 (49 S. E. 801), is discussed and is plainly distinguished from that of *Rylander* v. *Allen,* by the wagering element appearing therein, which distinguishes it also from the present case.

In the present case the change in the beneficiary, or the assignment to Ben Banks, was made with the full knowledge and approval of the insurance company, and thereafter premiums due on the policy were paid by the assignee to the company's agent and accepted by the company. It does not appear that Banks agreed to repay to Wilson the amount which Wilson had paid the company as premiums before the assignment of the policy to Banks, nor does it appear that any benefit whatever was, under the agreement of the parties, to flow to the insured because of the assignment, but the assignment appears to have been prompted solely by the interest which the insured felt in the assignee. This interest was not unnatural or surprising, since all the parties lived in the same house up to the time of the death of the insured, and the relations between him and his stepfather-in-law, Banks, appear to have been cordial; though the relationship or connection might not itself be sufficient to give Banks an insurable interest in the life of Wilson (as to which we express no opinion here). Such a connection is cer-

tainly more remote than that between brothers-in-law or between uncle and nephew, and our Supreme Court has held that these relationships will not in themselves support an insurable interest. See *Chandler* v. *Mutual Life and Industrial Association,* 131 *Ga.* 82 (61 S. E. 1036); *Doody Company* v. *Green,* 131 *Ga.* 568 (62 S. E. 984). However, in this case the beneficiary did not take out the policy of insurance, and under rulings of our Supreme Court, following that made in *Union Fraternal League* v. *Wallon,* supra, it is not necessary that an insurable interest be shown to exist, where the policy is obtained and the premiums are paid by the insured himself, or where the premiums on such a policy are paid by the insured for a time, and an assignment of the policy is made thereafter to one who is merely a "friend," and who subsequently pays all future premiums—as in the case of *Ancient Order United Workmen* v. *Brown,* supra. Here the evidence discloses nothing that would indicate that a wagering contract was entered into between Banks and the insured; and under the testimony in the case it appears to us that the trial court rightly directed a verdict in favor of the plaintiff, since no other verdict could have been legally rendered.          *Judgment affirmed. Roan, J., absent.*