### Modern Woodmen of America v. Christina Wieland.

1. PLEADING—*Where Formal Issues Are Waived.*—Where no replications are filed to special pleas, a jury is waived, and the cause is submitted upon the pleadings and proofs, formal issues are thereby waived.

2. APPELLATE COURT PRACTICE—*Points Not Argued Are Waived.*— Where the rulings of the trial court upon a matter are not argued, and no reasons or authorities are presented against those rulings of the court, the questions presented by those rulings will be considered as waived.

3. BY-LAWS—*Ordinarily Operate Prospectively Only.*—Ordinarily by-laws operate prospectively only, and it will be presumed that they are not intended to affect contracts already entered into.

4. SAME—*Shall Operate Retrospectively Only When Such Intention is Clear.*—By-laws shall be so construed as to give them a prospective operation only, and they shall be permitted to operate retrospectively only where the intention to have them so operate is clear and undoubted.

5. SAME—*Presumed that Amendments to, Were Not Intended to Affect Prior Contracts.*—It will be presumed that an amendment to the by-laws of a mutual benefit society was not intended to affect a contract of insurance previously issued by the society.

6. SAME—*Members of Mutual Benefit Societies May Contract to be Bound by Future By-laws.*—Members of mutual benefit societies may agree to be bound by any future by-laws or amendments which may be passed by the society, as if they were existing at the date of the contract. They may consent that new by-laws or amendments shall enter into and form parts of their contracts, modifying or varying them.

Modern Woodmen of America v. Wieland.

But the fact that such a member has consented to be bound by future by-laws or amendments does not alter the rule that they will be given a prospective operation, in the absence of a clear intent that they shall act retrospectively.

7. SAME—*Must be Reasonable to be Binding.*—The rule that if the laws of an order make its benefit certificates subject to such laws as may thereafter be enacted its certificates are then governed by subsequent laws and amendments, is subject to the qualification that the later amendment or by-laws be reasonable, and in harmony with the general policy of the order.

8. SAME—*Must Give a Reasonable Time in Which to Abandon a Prohibited Occupation.*—If it be conceded that mutual benefit societies have a right to purge themselves of members engaged in the liquor business, such members who entered the business when the by-laws permitted them to do so, must be given a reasonable time in which to abandon the prohibited occupation and withdraw their investments therefrom.

9. STATUTE—*Retrospective Laws to be Rigidly Construed.*—Retrospective laws are regarded as impolitic and unwise, and they may often be said to be unjust and oppressive. Although they may in a given case be valid, they will always be subject to such a construction as will circumscribe their operation within the narrowest possible limits, consistent with the manifest intention of the society as indicated by the language used. When it can be avoided they will not be permitted to destroy the validity of a certificate and to deprive a person of all rights under it.

10. WAIVER—*Knowledge of Facts Necessary to Establish.*—Where a mutual benefit society receives dues and assessments from a member engaged in a prohibited occupation without notice that he is so occupied, such act does not establish a waiver by the society of the effect of the by-law prohibiting such occupation.

Assumpsit, on a certificate of life insurance. Appeal from the Circuit Court of Rock Island County; the Hon. WILLIAM H. GEST, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed June 25, 1903.

J. W. WHITE and JACKSON & HURST, attorneys for appellant.

JOSEPH L. HAAS, attorney for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

This was a suit brought by Christina Wieland, the widow of George Wieland, deceased, against the Modern Woodmen of America, upon a certificate issued by that society to her

husband, designated therein as "neighbor George Wie-
land." This certificate agreed that upon the death of George
Wieland while a member of that fraternity in good stand-
ing, his wife, Christina, should be paid from its benefit fund
an amount not exceeding $2,000. The certificate was
expressly made subject to the conditions on the back thereof
and named in its fundamental laws, and was made "liable
to forfeiture if said neighbor shall not comply with said
conditions, laws, and such by-laws and rules as are or may
be adopted by the head camp or the local camp of which
he is a member." The declaration contained a special
count upon the certificate, and averred that Wieland was
during his lifetime and up to the time of his death a mem-
ber in good and regular standing and that he had not vio-
lated the conditions named on the back of the certificate;
and that Wieland and plaintiff had performed all the duties
and complied with all the conditions precedent on their
part to be performed under said certificate, and the funda-
mental laws and by-laws of the defendant. The first plea
was *non est factum*. The second plea averred that at the
time of his death and for fourteen months before Wieland
was not in good and regular standing in the defendant order
and not entitled to participate in the benefit fund. This
plea concluded to the country. The third plea was like the
second except that it concluded with a verification. The
fourth plea set out the laws in force when Wieland joined
the society, the power of amendment therein reserved, and
a by-law alleged to have been in force during 1896, being
a by-law hereinafter referred to as adopted in 1895; and it
averred that during July, 1896, Wieland was engaged in
the business of a saloonkeeper and saloon bartender, and
remained therein till his death, and by that fact and the
operation of said by-law his contract with the defendant
was forfeited, and the certificate sued upon became null
and void, and defendant is not liable thereon. The fifth
plea alleged Wieland was a saloonkeeper or saloon bar-
tender during all of 1897 till his death, October 9, 1897, and
set up the by-law of June 4, 1897, hereinafter referred to,

and averred that by reason of Wieland's said occupation and said by-law said certificate sued on, if of any validity before June 4, 1897, was from and after that date forfeited, null and void, and defendant was not liable. No replications were filed to these special pleas, but a jury was waived and the cause was submitted upon the pleadings and proofs. Formal issues were thereby waived. (Supreme Court of Honor v. Barker, 96 Ill. App. 490.) We must treat the case as if such formal replications were filed as the evidence tends to prove.

The proofs were the certificate sued upon and a stipulation as to the facts. The court refused propositions of law tendered by the respective parties, and prepared one proposition of its own motion and marked it held. Plaintiff had judgment for $2,438, which it was stipulated was the sum due her if entitled to recover. Defendant appeals. The action of the court upon the propositions of law is not argued in detail by the defendant. No reasons or authorities are presented against those rulings of the court. The questions presented by those rulings have therefore been waived. The question argued is whether the stipulated facts entitled the plaintiff to recover.

The certificate was dated April 9th, and delivered April 30, 1887. At that time George Wieland was engaged in the employment of a stationary engineer. The following by-law was then in force:

" Persons, to become members, must be males over eighteen and under fifty-one years of age, of sound bodily health and mind, of exemplary habits, good moral character, and engaged in an honorable and lawful business or avocation. Persons engaged in the following kinds of business or employments shall not be admitted to this fraternity: Railway brakemen, miners, employes in gun powder factories, wholesalers and manufacturers of liquors, saloonkeepers, saloon bartenders, balloonists, sailors on the lakes or seas; but this section shall not be construed as invalidating certificates issued prior to April 2, 1885."

This by-law remained in force till November 15, 1888, when another by-law was adopted of like effect as to saloonkeepers and other specified occupations, with this qualifica-

tion : "but this section shall not be construed as invalidating certificates issued prior to December 1, 1888." This by-law remained in force till November 13, 1890, when the society adopted another similar by-law, increasing the number of prohibited occupations, and containing a like qualification that it should not invalidate certificates issued prior to December 1, 1888. While that by-law was in force, on December 1, 1890, Wieland engaged in the business of a saloonkeeper, and, as the proprietor thereof, sold at retail, malt, spirituous and vinous liquors to be used as a beverage, and continued in that business till his death. The by-law last referred to continued in force till November 10, 1892, when the society adopted another by-law named "Division 1, Section A," similar to the by-laws already recited, in its provisions that persons engaged in certain specified occupations, including saloonkeepers, should not be permitted as members, with the following added clause:

"If, after a person has become a member of this fraternity, he engages in any of the employments or occupations enumerated in section A, division 1, of the fundamental laws, this certificate shall be forfeited by such act, and the same shall be null and void. * * * but this section shall not be construed as invalidating certificates issued prior to December 1, 1888."

This by-law remained in force till June 5, 1895, when the society enacted a by-law named "Division 10, Section A," of like tenor to the by-law first above quoted, except that it prohibited a large number of employments, and then continued as follows:

"If, after a person has become a member of this fraternity, he engages in any of the employments herein enumerated, his benefit certificate shall be forfeited by such act, and the same shall be null and void."

It then provided that a neighbor might without invalidating his benefit certificate engage in certain of the prohibited employments (but not including the business of wholesaler or manufacturer of liquors, saloonkeeper or saloon bartender),

"If he shall, before entering any of the above mentioned occupations, file with the head clerk a written waiver of any liability of this order upon his benefit certificate, founded upon the death of such neighbor, either as the result of accident occurring in or disease directly traceable to his employment in such prohibited occupations. Such waiver if not filed before the member's entrance upon such prohibited occupation shall have the same effect if filed at any time during his continuance in such employment if accompanied by a certificate of sound bodily health."

At the same time it also adopted the following by-law:

"Each and every neighbor who * * * shall engage in any of the prohibited occupations mentioned in section A, division 10, shall stand suspended, and during such suspension his benefit certificate shall be null and void."

It also at the same time adopted another by-law directing how a neighbor who had been suspended more than sixty days and less than one year by reason of having engaged in any of the prohibited occupations named in the by-laws might be restored to beneficiary membership, but added thereto:

"No neighbor can reinstate who has been suspended for engaging in a prohibited occupation, unless it be one for which waiver is provided."

The business of saloonkeeping was not one of the prohibited occupations for which waiver was provided, and these by-laws did not afford a saloonkeeper any opportunity of reinstatement.

Wieland's contract and the by-laws of the order required of him the monthly payment of dues and assessments. He paid all dues and assessments required of him by his contract and the laws of the order, and maintained himself in good and regular standing therein in all ways (except as his occupation of saloonkeeper may have affected his standing) till July 10, 1896, at which time, the by-laws of June 5, 1895, being still in force, the order refused to accept from him the further payment of dues and assessments, though he was ready and willing and offered to pay the same; and thereafter he repeatedly offered to pay and tendered to the proper officer to receive them the amount of

such dues and assessments, as they became payable from time to time; but said officer and the order refused and persisted in refusing to receive them from him. He died October 9, 1897.

When on December 1, 1890, Wieland engaged in the business of keeping a saloon, his certificate was not thereby invalidated, because the by-law then in force forbidding the reception of saloonkeepers as members expressly provided that it should not be construed as invalidating certificates issued prior to December 1, 1888, and his certificate was issued in April, 1887. He therefore remained a member in good standing and entitled to his benefit certificate, notwithstanding his business of saloonkeeping. The by-law adopted in 1892 strengthened his position in the order, for while it enacted that if a person engaged in any of the prohibited employments after he became a member his certificate should thereby be forfeited and become null and void, it further enacted that that provision should not be construed as invalidating certificates issued prior to December 1, 1888. In other words, the holder of a certificate issued prior to December 1, 1888, was permitted to engage in the prohibited occupations, and he would not thereby invalidate his certificate. From the time Wieland became a saloonkeeper till June 5, 1895, nothing occurred to affect his standing, and during that time he paid all dues and assessments required of him by the contract. He became a saloonkeeper when the laws were so framed as to permit him to engage in that business. The by-laws of 1892 permitted him to continue in it, and expressly provided that his being in that business should not invalidate his certificate. For four years and six months he was a saloonkeeper in regular standing in the order, and the order was receiving his regular dues. The by-laws of June 5, 1895, said that saloonkeepers should not be admitted as members of the fraternity. But so did the by-laws in force when Wieland joined, and those adopted in 1888, 1890 and 1892; yet each of these had a proviso that the by-law should not be construed as invalidating certificates issued prior to a

certain date. Under the sanction of these enactments Wieland became the proprietor of a saloon, and of the liquors kept there for sale at retail. The by-laws of June 5, 1895, omitted the proviso previously inserted, that they should not invalidate certificates issued prior to a date specified. They also contained this new provision :

" If, after a person has become a member of this fraternity, he engages in any of the employments or occupations herein enumerated, his benefit certificate shall be forfeited by such act, and the same shall be null and void."

It provided how those engaged in certain prohibited occupations might be reinstated, but excluded saloonkeepers from that privilege.

The by-laws of 1895 do not expressly say that if a member who has engaged in any of the specified occupations at a time when the laws of the order permitted him to do so, shall continue in such occupation after the adoption of that by-law, his benefit certificate shall be forfeited by such continuance therein, and shall become null and void. The language of the by-law literally construed applies only to persons who enter upon such occupation after the adoption of that by-law; and under such a construction the by-law of 1895 did not invalidate Wieland's certificate. It is a general rule of law that such enactments are to be given only a prospective operation. Thus Niblack on Benefit Societies, in section 26, says :

" Ordinarily, by-laws operate prospectively only, and it will be presumed that they are not intended to affect contracts already entered into. A member may know that certain amendments to the by-laws have been passed, or he may even vote for them, but it does not follow from this that he consents that they may have a retroactive force and may modify a contract which he holds with the society."

And in section 27 the following language is used :

" It is a recognized rule in the construction of statutes that they shall be so construed as to give them a prospective operation only, and that they shall be permitted to operate retrospectively only where the intention to have them so operate is clear and undoubted. The same canon

of construction should be applied to amendments and alterations of the by-laws of a society. They should not apply to or set aside acts already done under the sanction of the by-laws, unless it clearly and unmistakably appears that the authority adopting them intended that they should do so. It will be presumed that an amendment to the by-laws was not intended to affect a contract of insurance previously issued by the society. * * * Members may contract in reference to laws of future enactment—may agree to be bound by any future by-laws or amendments which may be passed by the society, as if they were existing at the date of the contract. They may consent that new by-laws or amendments shall enter into and form parts of their contracts, modifying or varying them. But the fact that a member has consented to be bound by future laws or amendments does not alter the rule that they will be given a prospective operation in the absence of a clear intent that they shall act retrospectively. * * * Retroactive laws are regarded as impolitic and unwise, and they may often be said to be unjust and oppressive. Although they may in a given case be valid, they will always be subject to such a construction as will circumscribe their operation within the narrowest possible limits, consistent with the manifest intention of the society as indicated by the language used. When it can be avoided they will not be permitted to destroy the validity of a certificate and to deprive a person of all rights under it."

If, however, the by-laws of 1895 be construed to apply to all persons then members and then engaged in the employments prohibited thereby, that construction would at once forfeit and render null and void all certificates held by members who had theretofore and under the prior by-laws been lawfully pursuing the occupation so prohibited. These by-laws prohibit not only saloonkeeping but also over twenty occupations. A by-law which would at once cancel all certificates held by all members engaged in conformity with its prior by-law in twenty different occupations would be very sweeping. The rule that if the laws of the order make its certificates subject to such laws as may thereafter be enacted its certificates are then governed by subsequent laws and amendments, is subject to the qualification that the later amendment or by-law be rea-

sonable, and in harmony with the general policy of the order. Thus, in Niblack on Benefit Societies, Sec. 25, it is said:

" Even though a certificate of membership in a mutual benefit society contains upon its face the explicit statement that the contract of insurance evidenced thereby is subject to its by-laws and to any amendments thereto which may thereafter be made, it is subject to the implied condition that any subsequent amendment shall be reasonable; and any amendment which entirely changes the scheme of insurance, and makes a radical departure from the fundamental plan, is not a reasonable exercise of the reserved power of amendment. An amendment designed to perfect in matter of form and detail, the original plan, will, if otherwise unobjectionable, be within the terms of the contract; but one calculated to defeat or destroy that plan, or to substitute for it some other and essentially different scheme, will be an abuse of power, a violation of the contract, and an unreasonable and invalid amendment."

In Supreme Commandery v. Ainsworth, 71 Ala. 436, the court said:

" While a subsequent law, because of the assent of the member, may add new terms or conditions to a certificate— terms or conditions reasonably calculated to promote the general good of the membership—and may be valid and binding, it does not follow that a law operating a destruction of a certificate, or a deprivation of all rights under it, would be of any force." Bacon on Benefit Societies, Sec. 188; Hirschl on Fraternities and Societies, 63; Deuble v. Grand Lodge, 72 N. Y. Supp. 755; N. W. B. & M. A. A. v. Wanner, 24 Ill. App. 357.

We conclude that as Wieland entered upon the business of saloonkeeping when the by-laws permitted him to do so, and as the order so adjusted its by-laws that he could, and did, continue therein and remain a member for several years, and as the order received dues and assessments from him during all that time, it could not thereafter deprive him at once of his certificate and of the benefit of all payments he had made, and practically confiscate that which was to him a property right. A by-law destructive of the liability the society had assumed would be unreasonable. It is obvi-

ous that Wieland could not at once abandon his business in which he was engaged, and the property he had invested therein, without financial loss. If it be conceded that such societies have a right to purge themselves of members engaged in the liquor business, either because it is injurious to health and increases the risk of the society, or for any other reason, yet we are of opinion that such members who entered the business when the by-laws permitted them to do so, must be given a reasonable time in which to abandon the prohibited occupation and withdraw their investments therefrom, and that it can not forfeit their certificates till they have failed to avail themselves of a reasonable opportunity thus extended to them. The by-laws of 1875 gave saloonkeepers no such opportunity. If they had any effect upon Wieland's certificate they at once forfeited it, and it became null and void the instant the by-law was adopted. A by-law intended to produce that result would be unreasonable, and therefore one which the society was without authority to enact.

Upon a consideration of the facts in the case reported as Supreme Council Royal League v. Moerschbaecher, 88 Ill. App. 89, and Moerschbaecher v. Supreme Council Royal League, 188 Ill. 9, we conclude that case is not opposed to the view we have here taken. There the constitution of the order precluded a saloonkeeper from becoming a member. Moerschbaecher, in a stipulation entered into when he joined the order, declared he was not then a saloonkeeper, and if he entered that business, his doing so should forfeit and absolutely terminate all rights and benefits of himself and his beneficiaries, without proceedings for his expulsion or otherwise. His certificate was made subject to all by-laws then in force and thereafter enacted. A by-law then in force required, if a member should become a saloonkeeper after his admission to the order, a notice should be mailed him that further continuance in the business would forfeit all beneficial rights, and if he continued in it he would be declared suspended at the next meeting from all interest in the benefit fund, but might remain a

social member, and might be reinstated upon permanently relinquishing the occupation. After he became a member that by-law was repealed by one providing that any member who, after obtaining membership, became engaged in a prohibited business should stand suspended from the benefit fund and forfeit all interest therein from the date of his engagement in the prohibited business, and no benefit should be paid to his beneficiary on account of his death while engaged in said business. Moerschbaecher, after becoming a member, engaged actively in the business of saloonkeeper, and so continued till his death. The Appellate Court held that his stipulation was a contract by virtue of which his entering into the saloon business operated of itself to suspend all his rights under the certificate while engaged in that business, and that there was no waiver. The Supreme Court held the by-law which substituted immediate suspension for suspension after notice mailed to him was not unreasonable under the circumstances of that case, and was effective and legal prospectively, and he was bound by the by-law so adopted, and that the question of waiver was one of fact, upon which the decision of the Appellate Court was conclusive. In that case the member had stipulated that if he became a saloonkeeper that should of itself avoid his certificate without any action by the order, and the constitution of the order forbids a saloonkeeper to be a member. In this case the laws of the order permitted Wieland to become a saloonkeeper at the time he entered into that business. In this case proof that Wieland paid dues and assessments after the passage of the by-law of 1895 does not establish a waiver by the defendant of the effect of that by-law, because the proof does not show defendant or its local camp knew he was engaged in the business of keeping a saloon when defendant received said dues. A knowledge of that fact was necessary to establish a waiver. (Independent Order of Foresters v. Schweitzer, 171 Ill. 325; Coverdale v. Royal Arcanum, 193 Ill. 91; Modern Woodmen v. Lane, 62 Neb. 89.) But for the reasons previously stated we regard the by-law of 1895 as unreasonable, as applied to Wieland.

On June 4, 1897, the order adopted by-laws aimed only at the liquor business, and which provided that no person should be, or become, a member who is, or shall be, engaged in the manufacture or sale of malt, spirituous or vinous liquors as a beverage, and that the certificate of any member now engaged in such business "is hereby declared to be, and is hereby made, absolutely null and void." As this legislation was after the order had treated Wieland as no longer a member, we assume he was not bound thereby. But if a member is bound by action taken by the order after he has been improperly suspended or expelled, this by-law was unreasonable as to Wieland, for the reasons already suggested.

The judgment of the court below is in accordance with the views here expressed, and is therefore affirmed.