### No. 22,807.

S. J. HOWARD, as Guardian, etc., *Appellee*, v. SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, *Appellant*.

#### SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE—*By-laws—Insured Changing to More Hazardous Occupation—Evidence.* The jury's finding that the holder of a fraternal beneficiary certificate of life insurance had not changed his occupation from that of a common laborer to a more hazardous employment is not in conflict with the evidence disclosed by the record, and the record fails to show conclusively that there was such change in the nature of the deceased's occupation.

2. SAME—*Change to More Hazardous Occupation—Knowledge by Company—No Formal Notice Necessary.* Where a by-law of a fraternal insurance society provided that where a member changed his occupation to one more hazardous he should notify the clerk of the local society to that effect, and thereafter pay a higher rate of assessment, and that his contract of insurance should be void unless he did so, it is held that where the clerk (and the other officers) of the local society knew of deceased's change of occupation—if there was in fact such change—and for several years thereafter continued to accept his regular monthly assessments at the old rate, without demand for the higher rate, and the insured met his death through natural causes wholly unrelated to his employment, the society cannot avoid its liability to pay the insurance.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed October 9, 1920. Affirmed.

*O. L. O'Brien, W. N. Banks,* both of Independence, and *D. E. Bradshaw,* of Omaha, Neb., for the appellant.

*Sullivan Lomax,* of Cherryvale, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover on a fraternal beneficiary certificate of life insurance.

In 1913 Thomas E. McDowell became a member of the defendant society and received from it a certificate of insurance in which the defendant, subject to certain conditions and stipulations, bound itself to pay a thousand dollars to McDowell's widow and children at the time of his death. McDowell died in 1918, and the defendant refused to pay.

As a defense to this action the defendant pleaded that the

certificate of insurance issued to McDowell was subject to the by-laws of the defendant society; and, further, that one of these by-laws provided that if an insured member was engaged in any of the enumerated list of hazardous occupations, one of which was employment in an electric current generating plant, he would be required to pay a higher assessment' than the regular rate imposed upon persons employed in ordinary vocations. Another by-law provided that if a member changed his employment to one specified as hazardous, he should notify the clerk of his local organization, and—

"While so engaged in such occupation shall pay on each monthly installment of assessment thirty cents for each one thousand dollars of his beneficiary certificate in addition to the regular rate. Any such member failing to notify the clerk and to make such payments as above provided shall stand suspended and his beneficiary certificate be null and void."

The defendant further pleaded that when McDowell applied for membership and insurance in the defendant society he stated that his occupation was that of a common laborer, but that long before his death he had quit the business of that of a common laborer and had engaged in the occupation of an oiler in an electric current generating plant; and that McDowell had never notified the clerk of his camp or lodge of his change of occupation; and that while McDowell was so engaged as an oiler at the electric light plant he continued to pay his monthly installments at the same rate which he had been required to pay while working as a common laborer.

Under the terms of the insured's application, the certificate of insurance, and the constitution and by-laws of the society, the defendant contended that McDowell stood suspended and that his said beneficiary certificate became and at the time of his death was null and void and of no legal force and effect whatsoever.

Plaintiff's reply denied that McDowell had changed his occupation, but if he did the fact was known to the defendant, and that the defendant had accepted McDowell's premiums for insurance with full knowledge at all times of the business and kind of work that he was engaged in; that defendant accepted the premiums without making any demand or claim for any additional or higher premium and that it thereby waived such defense if, in fact, it ever had such defense; and that defend-

ant was estopped to set up said defense in its answer. Replying further, plaintiff alleged that McDowell came to his death by natural causes and not by reason of his occupation, nor by reason of any work or labor he was at the time or had been performing.

The evidence for the plaintiff was to the effect that McDowell had been a member of the defendant society for about five years; that he had been a laborer by occupation, but that shortly after he joined the society he entered the employment of the local electric light company; and worked for about five years and until his death. Just what was the nature of his employment is not altogether clear. His stepdaughter said he was "an oiler" at the electrical plant, but a witness who had been "Consul Commander" (head officer) of the defendant's local lodge, and who knew McDowell both as a fellow member and as a workingman, testified that McDowell was first "at one work and then another, around that plant there." He testified, "When I was down around there I've found him to be out digging holes for to set poles  .  .  .  I refer to the electric light plant at Cherryvale." Part of the time McDowell worked inside the plant and part of the time outside, but what he did inside the plant was not disclosed.

It was shown that the matter of an extra assessment for hazardous employment had been brought up for discussion in the defendant's local lodge, and that one or more of the defendant's responsible officials had explained the matter. One witness testified:

"Well, I don't know whether this was in the presence of Ed McDowell or not, but I brought up the question when this ten cent hazardous was put on—and asked the question if this ten cents meant hazardous on all work—the soldier boys and all. And the deputy said it did. That was the—The matter was discussed in camp. I asked the question myself. F. M. Pratt [defendant's district deputy] answered it."

The clerk of the local camp, to whom the stipulated notice of change of occupation should have been given by McDowell— if he did change his occupation—testified—

"I was acquainted with  .  .  .  McDowell. I have known him ever since I was clerk. I was personally acquainted with him for about two years. I knew when he died.  .  .  .  I thought he was a common laborer.  .  .  .  I had heard that McDowell was working at the light plant and I knew that he was working around there probably a year before he died. I never saw him work there, but I heard he worked there.

I never said anything to him about it. I collected the dues from Mc-Dowell, and have a record showing the payment of those dues. . . . I knew he worked around the electric light plant the last year or so. But I didn't know what he did around there.

"Q. Didn't know in what capacity he worked? A. No, sir.

"Q. Nor whether he was working inside the plant or not? A. Well, no, I couldn't answer that for sure. I know he worked around about there, and that is all I know about it.

"McDowell paid the war tax, but he never paid anything on account of the extra hazardous occupation of thirty cents provided by the by-laws."

It seems to be conceded that some unexplained "ten cent hazardous" assessment levied by the society was paid by McDowell.

The defendant's evidence disclosed nothing further throwing light on the nature of deceased's employment. It showed that the deceased had applied for membership insurance as a "common laborer," and emphasized the stipulations of the application, certificate, constitution and by-laws, which provided that a higher assessment should be paid by members engaged in a hazardous occupation, and that employment in an electric generating plant fell in that category; that none of the officials of the order, at its general headquarters at Omaha, Neb., knew the nature of McDowell's employment except as stated by himself in his application for insurance.

McDowell was stricken with apoplexy in the railway depot at Cherryvale and died in six hours, and his occupation had no known or conjectured relation thereto.

The general verdict was in favor of the plaintiff, and the jury made certain special findings:

"Q. 1. Did deceased, Thomas E. McDowell, make a written application for membership in the defendant's order? A. 1. Yes.

"Q. 2. In this written application did said Thomas E. McDowell state that he was by occupation a common laborer? A. 2. Yes.

"Q. 3. Was he at the time of making said statement in fact engaged in working as a common laborer? A. 3. Yes. . . .

"Q. 5. What was the occupation of said deceased at, or shortly prior to the time of the death? A. 5. Common labor.

"Q. 6. After the issuance of the certificate to him, upon which this suit is brought, did deceased in fact engage in the occupation of being an employee in an electric current generating plant? A. 6. No. . . .

"Q. 11. Did deceased meet his death while employed in the plant which generated electric current? A. 11. No."

Judgment was rendered accordingly and defendant appeals.

We cannot agree with defendant's contention that the evidence "abundantly shows" that the deceased had changed his occupation from that of a common laborer to one more hazardous. While there was testimony that the deceased, in talking to his stepdaughter and to plaintiff, had characterized his employment as "oiler" at the electric plant, no one testified as to the nature of that employment, and it was shown that while he was employed at the electrical plant he was seen on occasions to be working at common labor, such as digging holes for fence posts, out of doors. It would seem that if there had been a clear, decided, and permanent change in the character of the employment of the deceased from that of a common laborer to some sort of more hazardous labor in and about the Cherryvale light plant, and that he was so employed for about five years next preceding his death, that fact could have been conclusively established without difficulty.

Furthermore, if there was such complete and permanent change in the nature of the deceased's occupation it existed for such a long duration of time, with the knowledge of the local lodge and its officers, that a formal notice by deceased to the defendant's local camp clerk was unnecessary. The camp clerk did know the nature of his employment; and his testimony, quoted above, is about all the light disclosed by the record as to the nature of the deceased's employment. If, indeed, the jury had found that the assured had changed his occupation to one specified in the by-laws as being more hazardous and carrying a higher rate of assessment, and continued to pay only the lower rate assessed on a common laborer, and had met his death in the course of such more hazardous employment, a very difficult situation would confront the plaintiff. (*Ridgeway v. Modern Woodmen,* 98 Kan. 240, 157 Pac. 1191) ; but as that change of occupation was not established to the satisfaction of the jury, and as McDowell's death came from natural causes in no way related to his employment, this court can discern no reason for disturbing the judgment.

(*McDonald v. Chosen Friends,* 78 Cal. 49 ; *Order of Foresters v. Schweitzer,* 171 Ill. 325 ; *Brotherhood of Painters. etc., v. Moore,* 36 Ind. App. 580 ; *Johnson v. Modern Brotherhood of America,* 109 Minn. 288 ; 29 L. R. A., n. s., 446 ; *Modern Woodmen of America v. Colman,* 68 Neb. 660.)

See, also, *Modern Woodmen of America v. Lane,* 62 Neb. 89 ;

*Supreme Lodge K. of H. v. Davis,* 26 Colo. 252; *Modern Woodmen of America v. Wieland,* 109 Ill. App. 340, 351.
Affirmed.