## SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* THORNTON.

By-laws enacted by a fraternal insurance order will, in the absence of a clearly expressed intention to the contrary, be construed to have a prospective operation.

Argued February 18,—Decided April 25, 1902.

Reheard on briefs, June 2,—Decided July 17, 1902.

Action upon insurance certificate.    Before Judge Reid.    City court of Atlanta.    June 25, 1901.

*John L. Hopkins & Sons* and *Rosser & Carter,* for plaintiff in error, cited 1 Bac. Ben. Soc. & L. Ins. §§ 81, 91a, 92, 185; Bliss, L. Ins. 766 – 7 ; 2 May, Ins. 552 ; Cool. Con. Lim. 77 ; 5 Am. & Eng. Enc. L. 100 ; 23 Id. 448 ; 33 Id. (2d ed.) 1066 ; Civil Code, §§ 4 par. 1, 5730, 5982 ; 12 *Ga.* 526 ; 43 *Ga.* 390 ; 111 *Ga.* 271 ; 130 U. S. 670 ; 93 U. S. 284 ; 95 Tenn. 157, s. c. 30 L. R. A. 838 ; 71 Ala. 436 ; 180 Ill. 621, s. c. 72 Am. St. R. 239 ; 24 Hun, 349 ; 31 Hun, 49 ; 117 Ind. 289 ; 79 Mich. 440 ; 46 Vt. 362 ; 102 Ind. 262 ; 122 Ind. 567 ; 14 Daly, 394 ; 18 Iowa, 319, 425 ; 51 Pa. St. 402 ; 92 Pa. St. 510 ; 42 N. J. Eq. 459 ; 29 Conn. 68 ; 60 Tex. 532 ; 65 N. Y. 232 ; 34 Wis. 389 ; 25 L. R. A. 149 ; 43 Id. 390 ; 47 Id. 136 ; 31 C. C. A. 570 ; 28 Id. 667 ; 24 Fed. 159 ; 25 Fed. 315 ; 32 Fed. 37 ; 17 Atl. 57 ; 43 Atl. 192 ; 44 Atl. 380 ; 49 Atl. 784 ; 52 N. E. 502 ; 53 N. E. 620 ; 31 N. W. 779 ; 44 N. W. 856 ; 73 N. W. 22, 1014 ; 75 N. W. 1012 ; 79 N. W. 542 ; 87 N. W.

293 ; 22 Pac. 1125 ; 34 Pac. 103 ; 50 Pac. 165 ; 23 So. 191; 64 S.
W. 1070.

*King & Spalding*, contra, cited Civil Code, §§ 2135, 3652 ; 104
*Ga.* 256; 107 *Ga.* 115, 121, 127; 112 *Ga.* 545; 52 *Ga.* 640;
Boisot, By-Laws, §§ 124, 125 ; 31 Ins. L. J. 389; 42 L. R. A. 247 ;
48 Mich. 610; 108 Mich. 440; 83 Mo. App. 512; 24 Ill. App.
359; 168 Pa. St. 377; 98 Fed. 66; 104 Fed. 639; 112 Fed. 119;
34 N. E. 939; 39 N. W. 803; 56 S. W. 668.

SIMMONS, C. J.    The plaintiff in error, a mutual fraternal bene-
fit association, issued to J. A. Thornton, on May 31, 1893, a certif-
icate for $3,000, payable at his death, on certain conditions, to his
wife as beneficiary.    This certificate contained, among others, the
following stipulation : " This certificate is issued and accepted sub-
ject to all the conditions on the back hereof, and named in the Sover-
eign Constitution, fundamental laws, and by-laws of this fraternity,
and liable to forfeiture if said Sovereign [member] shall not com-
ply with said conditions, constitution, fundamental laws, and such
by-laws and rules as are or may be adopted by the Sovereign Camp,
head camp, or the camp of the jurisdiction of which he is a mem-
ber at the date of his death."    Among the conditions referred to,
and which were made a part of the certificate, was the following :
" If the member holding this certificate  .  .  shall die  .  .  by
his own hand (except that it be shown that he was at the time in-
sane),  .  .  then  .  .  this certificate shall be null and void."
In 1897 the following by-laws were enacted : "If the member hold-
ing this certificate  .  .  should die  .  .  by his own hand or
act, whether sane or insane,  .  .  or if any of the statements or
declarations in the application for membership, and upon the faith
of which this certificate was issued, shall be found in any respect un-
true, this certificate shall be null and void and of no effect."    " It
[the Sovereign Camp] shall enact laws for its own government and
for conducting the business of the order generally, provide penal-
ties for violation thereof, have power to prescribe and finally de-
termine the rights, privileges, duties, and responsibilities of itself
and its Camps and the membership of the Order."    In 1899, prior
to the death of Thornton, a by-law known as section 59 was en-
acted, as follows: " The following conditions shall be made a part
of every beneficiary certificate, and shall be binding on both mem-
ber and order."    " If the member holding this certificate  .  .

should die . . by his own hand or act, whether sane or insane; . . or if any of the statements or declarations in the application for membership, and upon the faith of which this certificate was issued, shall be found in any respect untrue, this certificate shall be null and void, and of no effect." At the same time another by-law, known as section 65, was adopted, reading as follows: "If any member of this Order . . should die . . by his own hand or act, whether sane or insane, . . or if the statements or declarations in his application for membership shall be in any respect untrue, his certificate shall be null and void, and of no effect;" and also, at the same time, a by-law known as section 68, as follows: "Each and every Beneficiary Certificate is issued only upon the conditions stated in and subject to the Constitution and laws. The Constitution and laws of the Sovereign Camp of the Woodmen of the World now in force, or which may be hereafter enacted, by-laws of the Camp now in force, or which may be hereafter enacted, the application and certificate shall constitute a part of the beneficiary contract between the Order and the member." There were other by-laws adopted in 1899, which are shown in the brief of evidence; but the view that we take of the case renders it unnecessary to set them forth here, as they would not be illustrative of the questions to be decided.

Thornton died after the adoption of the by-laws which we have quoted. He was insane at the time of his death, and died by his own hand. Notice and proofs of death were duly submitted to the insurance society, but payment of the amount of the certificate was refused. Mrs. Thornton, the beneficiary, thereupon brought her action upon the certificate in the city court of Atlanta. The evidence introduced on the trial consisted of the extracts from the constitution and by-laws of the defendant society which have been quoted above, together with others which it is not necessary to specifically enumerate, and a statement of facts agreed upon by counsel for both parties. After argument, the court directed a verdict for the plaintiff for the full amount of the policy, to which ruling the defendant excepted. This case has been twice argued, first orally and then by brief, by the able and learned counsel for the plaintiff and the defendant in error. Numerous cases have been cited by both sides upon the question of the power of an association of the character of the plaintiff in error, under such stipula-

tions in the certificate as are above set out, to enact by-laws which will become a part of the contract between the association and the member, without expressly declaring that the by-laws shall have a retroactive operation. A great many of the cases cited and relied on by counsel for the plaintiff in error do not discuss this question, but assume without argument that the by-laws under consideration are retroactive, whether made so by the by-laws themselves or not. Some cases hold that the simple adoption of a by-law makes it a part of the contract evidenced by the certificate containing stipulations similar to those in the certificate now under consideration, while still other cases hold that under such stipulations, in order to make a by-law retroactive in its effect, the by-law itself must declare, or at least manifest a clear intent, that it shall have such an operation. This is not the first time that this court has had this question under consideration. It was squarely presented for determination in the case of *Ancient Order* v. *Brown*, 112 *Ga.* 545, and, after full argument and careful consideration, we adopted the view of the class of cases last mentioned, and decided in effect that a by-law of a mutual benefit society, enacted subsequently to the issuance of a certificate of insurance, should be given a prospective operation, in the absence of a clear intent that it should act retrospectively. Leave was given counsel for the plaintiff in error to review the *Brown* case; but after careful consideration and much reflection, we have come to the conclusion that that decision is sound, and more in consonance with common sense and reason than those cases which take a contrary view. None of the other cases cited by counsel on either side are binding upon us, and we decided to follow those cases which in our opinion were most in conformity with law and reason, and therefore adopted the rule announced in the *Brown* case, supra.

The charter of a corporation of this character is of a dual nature. It is a contract between the corporation and the State or other power granting the charter, and it is also a contract between the corporation and its members. Whenever a corporation makes a contract with one of its members, that contract stands on the same footing as if he were a stranger; and this is true although none but a member can make a contract with it under its charter and by-laws. Being on the same basis as a stranger or third party in making the contract, that contract should be construed and regulated

as any other agreement would be between different parties. The member has the right to rely upon the same rules for the construction of his contract as are applicable to other contracts. While a member, in making a contract, may agree with the corporation that he will be bound by the constitution and by-laws of the organization existing at the time the agreement is made, and any other law that may be thereafter legally adopted, he is entitled to rely upon the contract and conditions as made until the lawmaking power enacts legislation which by its terms applies to his contract.

Mr. Niblack, in his work on Benefit Societies (2d ed.) 62, in discussing this subject, says: "It is a recognized rule in the construction of statutes that they shall be so construed as to give them a prospective operation only, and that they shall be permitted to operate retrospectively only where the intention to have them so operate is clear and undoubted. The same canon of construction should be applied to amendments and alterations of the by-laws of a society. They should not apply to or set aside acts already done under the sanction of the by-laws, unless it clearly and unmistakably appears that the authority adopting them intended that they should do so. It will be presumed that an amendment to the by-laws was not intended to affect a contract of insurance previously issued by the society." In speaking of the certificate of membership, on page 273 of the same work, the author says: "Of course, he may consent that they shall modify it, but in that case they become effective by reason of his consent, not by reason of their enactment. It will be presumed that an amendment to the by-laws was not intended to affect a contract of insurance previously issued by the society, and it will be so construed as to give it a retroactive force only when the intention to have it so operate is clear and undoubted." This is no new doctrine in law. It applies to acts passed by the legislature of a State as well as to laws enacted by a benefit society. It is a reasonable and just rule of construction for such acts. While a member may agree in his contract that laws thereafter passed shall bind him, such a law, in order to have that effect, must show clearly the intention of the lawmaking power that it shall become a part of the contract. The member is then put upon notice that his contract has been changed, and he can either acquiesce in the change or leave the association. The new law should not be ambiguous, or leave him in doubt as to whether or not it

applies to his contract, for otherwise the member might well believe his contract to be unaffected by the new legislation, and continue his membership for years, with the result that at his death, owing to the violation by him of a doubtful law, the contract could be set aside by the association, and his widow and children made to lose not only the amount of the insurance, but all the money paid by him as premiums. Applying these rules to the case at bar, we find that at the time Thornton made his contract with the association, no forfeiture was prescribed in case he should die by his own hand while insane. Four years later, the association enacted a law providing for a forfeiture in cases where the insured should die by his own hand, whether sane or insane. Two years thereafter, in 1899, other legislation to the same effect was enacted, one of the by-laws then passed declaring that if any member of the order should die by his own hand or act, whether sane or insane, his certificate should be forfeited. Construing together all the by-laws adopted in 1899, it seems to us that they were intended to have a prospective operation. The language used does not make it "clear and undoubted" that they were intended to act retrospectively. There is not one of them contained in the brief of evidence that manifestly and unmistakably applies to any certificate issued prior to the time of their adoption. None of them, except by mere implication, refers to the holders of certificates already issued. It therefore not being "clear and undoubted" that they were intended to apply to certificates then existing, under the rules of construction above laid down, they must be held to affect only those certificates which were thereafter issued.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*