SMITH v. OUR UNITED BROTHERHOOD et al. (No. 1694.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 21, 1916. On Motion for Rehearing, Jan. 4, 1917.)

1. INSURANCE ⬥719(1)—BENEFICIAL INSURANCE—ALTERATION IN BY-LAWS—PROSPECTIVE OPERATION.

A by-law of a fraternal benefit society, providing that should a member become permanently disabled, his policy shall be declared paid up for life, will, in the absence of language indi-

cating contrary intention, be considered intended to apply only to those thereafter becoming members, and not to one already a member, who under an existing by-law was entitled, on becoming totally disabled, to payment of half the amount of his policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1855; Dec. Dig. ⊜⊐719(1).]

2. INSURANCE ⊜⊐719(1)—BENEFICIAL INSURANCE—ALTERATION OF BY-LAWS—STATUTES.

Act May 1, 1909 (Acts 31st Leg. [1st. Ex. Sess.] c. 36) § 8, providing that changes of by-laws of a beneficial association shall bind a member as though made before he became a member, does not apply to a by-law intended to operate only on members whose certificates were issued after it was adopted.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1855; Dec. Dig. ⊜⊐719(1).]

3. INSURANCE ⊜⊐705—BENEFICIAL INSURANCE—CONSOLIDATION OF ASSOCIATIONS—LIABILITY.

A beneficial association with which another is consolidated, and which in consideration of transfer of all assets and property of the other assumes the insurance contract liabilities of the other, is liable for benefits to a member of the other.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1840; Dec. Dig. ⊜⊐705.]

Appeal from District Court, Franklin County; J. A. Ward, Judge.

Action by Joseph B. Smith against Our United Brotherhood and another. From an adverse judgment, plaintiff appeals. Affirmed in part, and in part reversed and rendered.

"Our United Brotherhood" was a fraternal benefit society under the laws of Texas. In 1912 it issued one of its benefit certificates to appellant, then about 30 years old. By the terms of the contract evidenced by the certificate appellant was—

"entitled to participate in the benefits provided by this society in accordance with the provisions of its articles of incorporation and by-laws as they now are or may be lawfully amended, as follows: First, not to exceed $3,000—on the death of said member to be paid to Cora C. Smith, related to said member as wife, subject to and in connection with the conditions and covenants hereinafter provided. Second, one-half of the amount that would have been paid to the said member, if demanded, within 90 days from the receipt of satisfactory proof of total and permanent disability that renders said member entirely unable to follow any vocation or pursuit. Such disability may be either the result of accident, disease contracted after becoming a member, or old age."

Claiming that as the result of disease contracted by him after the certificate was issued as stated, to wit, on or about May 1, 1913, he became totally and permanently disabled from following any vocation or pursuit, appellant demanded of said brotherhood that it pay him the sum of $1,500 as stipulated for in the certificate, and on its refusal to do so commenced suit against it.

In its answer to the suit, filed October 30, 1914, the brotherhood, among other things which need not be mentioned, relied upon the stipulation in the contract that appellant's participation in the benefits provided by the society was to be "in accordance with the provisions of its articles of incorporation and by-laws as they now are or may be lawfully amended," alleging that:

"At the time the plaintiff made his application for membership in said order section 128 of the constitution and by-laws of said order provided for the payment of certain portions of the certificates issued as a life certificate to each member upon such member becoming totally disabled to pursue any vocation, as is set out in the certificate attached to plaintiff's petition; that on the 11th day of June, 1913, and prior to the time plaintiff claims to have become disabled, the defendant in regular order and according to the constitution and by-laws amended section 128, and by such amendment no member was authorized to collect any amount in cash for a total disability, but upon proper showing and proof to the company the certificate of any member becoming totally disabled should become fully paid up and such member should be exempt from further assessments and dues; * * * that according to the terms of said application and certificate, if plaintiff is entitled to any of the benefit under said certificate the same is no more than a right upon proper showing to have issued to him a paid-up policy of insurance not to exceed the maximum amount stated in said policy."

It appears from the record that by an agreement in writing, entered into October 29, 1914, between the brotherhood and the Independent Order of Puritans, a fraternal beneficiary society under the laws of Pennsylvania, the latter, in consideration of the transfer to it of all the "assets and property of whatsoever kind and description" belonging to the former, assumed the "unpaid death, accident, and disability claims" against the brotherhood, and attached to the certificate which the brotherhood had issued to appellant a rider by which it agreed "to assume the insurance contract liabilities" of the brotherhood "as set forth in the contract to which this rider is attached."

December 17, 1915, appellant filed his second "amended original petition," on which the trial was had, making the Puritans, instead of the brotherhood, the defendant. February 28, 1916, the Puritans filed an answer, in which it adopted the answer to the suit made by the brotherhood, and alleged that as a fraternal beneficiary association it was subject only to the law governing such association which did not authorize it to take over the insurance of any other company; that its funds were raised by assessment of its members for their use and benefit; and that at the time of its consolidation, or attempted consolidation with the brotherhood, the latter also was—

"a fraternal beneficiary association, and operated as such without capital; that by the constitution and by-laws of the said order it was provided that special fund was created by regular assessments of its members for the purpose of paying disability claims; that such disability claims were to be paid only out of the said special fund and out of no other fund; that at the time of the attempted consolidation of the two companies there was according to the report made to the commissioner of insurance only the sum of $99.70 in the said fund, and there was at said time the claim herein sued on and an-

other claim that was unadjusted, amounting to the sum of $1,000; that no portion of the funds of this defendant can be used by it except in the payment of death and disability claims against it in favor of policy holders holding policies written by this defendant, and the funds of this defendant cannot be diverted and used for any other purpose save and except for such purpose. Wherefore this defendant says that if the plaintiff can recover anything at all, it will be for only his pro rata part of the sum of $99.70."

On special issues submitted to them the jury found that appellant, within the meaning of the certificate issued to him, on or about November 1, 1913, became totally and permanently disabled, "so as to render him entirely unable to follow any vocation or pursuit."

On these findings and findings of his own the court rendered judgment that appellant take nothing by his suit, and that the brotherhood and Puritans "go hence without day" and recover costs of appellant.

L. W. Davidson and S. M. Long, both of Mt. Vernon, for appellant. R. T. Wilkinson, of Mt. Vernon, for appellees.

WILLSON, C. J. (after stating the facts as above). Part of section 98 of the brotherhood's constitution and by-laws in force at the time the certificate was issued to him, was as follows:

"Second, one-half of the amount that would have been paid to said beneficiary in case of the death of said member, shall be paid to the said member, if demanded, within 90 days from the receipt of satisfactory proof of total or permanent disability rendering said member entirely unable to follow any vocation or pursuit. Such disability may be either the result of accident, disease contracted after becoming a member, or old age; provided further, that should the said total and permanent disability be the result of old age after reaching the age of 70, then the payment shall be in accordance with that section of the by-laws relating to old age disability."

The jury having found that appellant about November 1, 1913, became totally and permanently disabled, within the meaning of the certificate issued to him and the law above set out, and, it not being pretended that appellant for any reason was not then in good standing as a member of the brotherhood, and therefore not entitled to the benefits specified in that certificate and law, it must be assumed the trial court in rendering judgment against him did so because he was of opinion a change in the brotherhood's constitution and laws applicable to the case was effected by section 128, adopted June 11, 1913, which operated to deny appellant a right to the relief he sought. Said section 128, so far as it need be stated, was as follows:

"Should any member carrying the whole life level policy as mentioned in this section, and while not suspended for payment of dues, become totally and permanently disabled as a result of either accident or disease contracted after becoming a member rendering such member totally and permanently physically unable to follow any gainful avocation, pursuit or employ-

ment, or to do or perform any physical labor whatever, prior to attaining age 60, then upon satisfactory proof of such fact the Supreme Executive Committee shall declare such policy paid up for life; provided that should it later appear that such disability was not in fact total or permanent, then such member shall upon notice from the Supreme Executive Committee resume the payment of his or her original rate of contribution and shall pay same until death, but shall not be required to pay for any part of the time such disability existed prior to age 60."

[1] It will be observed that the by-law just set out did not by its express terms apply to members "carrying the whole life level policy," as appellant did, at the time it was adopted, and that there is nothing in its language directly negativing an intention that it should affect the rights of others than those who should become members after it was adopted. The rule applicable to changes in the laws of such an association has been stated as follows:

"Alterations in the by-laws of the association will not be given a retrospective operation where to do so would result in the impairment of vested rights; and even where no rights have become vested such alterations will not be construed to operate retrospectively, unless an intent that they shall have such operation clearly appears and no other reasonable construction is possible." 7 C. J. 1081.

And see 29 Cyc. 72 et seq., and, as illustrating the rule, Woodmen of the World v. Thornton, 115 Ga. 798, 42 S. E. 236; United Workmen v. Brown, 112 Ga. 545, 37 S. E. 890; Kaemmerer v. Kaemmerer, 231 Ill. 154, 83 N. E. 133; United Workmen v. Stumpf, 24 Tex. Civ. App. 309, 58 S. W. 840; Knights Templar & Mason's Life Indemnity Co. v. Jarman, 187 U. S. 197, 23 Sup. Ct. 108, 47 L. Ed. 139.

In the Thornton Case the court said:

"It will be presumed that an amendment to the by-laws was not intended to affect a contract of insurance previously issued by the society, and it will be so construed as to give it a retroactive force only when the intention to have it so operate is clear and undoubted. This is no new doctrine in law. It applies to acts passed by the Legislature of a state as well as to laws enacted by a benefit society. It is a reasonable and just rule of construction for such acts. While a member may agree in his contract that laws thereafter passed shall bind him, such a law, in order to have that effect, must show clearly the intention of the lawmaking power that it shall become a part of the contract. The member is then put upon notice that his contract has changed, and he can either acquiesce in the change, or leave the association."

In the Brown Case the court said:

"It is a well-recognized rule in the construction of statutes that a legislative enactment will be given a prospective operation only in the absence of a clear intent that it shall act retrospectively. End. Interp. St. § 273; Dwar. St. 681. It is not enough that general terms are employed broad enough to cover past transactions; for laws are to be construed as prospective only, if possible. Sedg. St. & Const. Law, 161, note 'a.' * * * The fact that Harvey (to whom the certificate was issued) agreed to comply with all of the laws, regulations, and requirements which might be enacted by the order subsequently to the issuance of his certificate does not alter the rule that they should be

given a prospective operation, in the absence of a clear intent that they shall act retrospectively."

In the Stumpf Case the court quoted approvingly as follows from Wist v. Grand Lodge, 22 Or. 271, 29 Pac. 610, 29 Am. St. Rep. 603:

"Rights will not be interfered with unless there are express words to that effect. It is not enough that upon some principles of interpretation a retroactive construction could be given to the law, but the intent to make it retroactive must be so plain and demonstrable as to exclude its prospective operation. 'It is not enough that general terms are employed broad enough to cover past transactions,' for laws 'are to be construed as prospective only, if possible.' Sedg. St. & Const. Law, 161. In fact, so great is the disfavor in which such laws are held, and so generally are they condemned by the courts, that they will not construe any law, no matter how positive in its terms, as intended to interfere with the existing contracts or vested rights, unless the intention that it shall so operate is expressly declared or is to be necessarily implied."

As we are of opinion section 128, when considered with reference to the rules indicated by the quotations made above, must be held to have operated prospectively only, and therefore did not affect the contract evidenced by the certificate which, before its adoption, had been issued to appellant, notwithstanding he agreed, when he accepted it, "to be governed by the laws and by-laws of the supreme lodge," and had a right to benefits provided only in accordance with the "by-laws as they now are or may be lawfully amended," it is unnecessary to determine whether, if said section 128 should be otherwise construed, its operation should be held to be limited "to such regulations as have reference to the member's duties and conduct as a member, and did not embrace an act that would produce a radical change in his rights" (Ericson v. Fraternal Mystic Circle, 105 Tex. 170, 146 S. W. 160), as contended for by appellant.

[2] If section 128 should be construed as applying only to contracts evidenced by certificates issued after the date of its adoption, as we have indicated we think it should be, then of course section 8 of the act of May 1, 1909 (General Laws, p. 358), invoked by appellee, did not authorize the ruling made by the trial court. The statute cited provided, with reference to such certificates, that:

"Any changes, additions or amendments to said charter articles of association, constitution or laws duly made or enacted subsequent to the issuance of the benefit certificate, shall bind the member and his beneficiaries and shall govern and control the contract in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership."

Obviously, we think, the statute should be held to apply only to members whose rights as holders of certificates were intended to be affected by changes made in the laws of the association. As we have seen, the section 128 in question adopted by the brotherhood operated only on members to whom certificates were issued after it was adopted.

[3] It follows that we think the judgment should be reversed; and the judgment should be here rendered for appellant for $1,500, the sum sued for, and to which he was entitled by the terms of his certificate, unless, as is contended by appellee, appellant in any event was entitled to recover only a pro rata part of $99.70, which, it appeared, was the total of the disability fund owned by the brotherhood at the time it transferred its property to the Puritans and the latter assumed the unpaid disability claims against the former. We do not think the contention should be sustained. The fact alone that the brotherhood's disability fund amounted to only $99.70 October 29, 1914, when it transferred its assets to the Puritans, we think would have fallen short of showing that a recovery by appellant against the brotherhood should have been limited to that sum or a part of it had the brotherhood continued in business; and certainly was not a reason why a recovery against the Puritans should have been so limited, for it assumed, without limitation, the unpaid disability claims against the brotherhood.

The judgment in so far as it is in favor of the brotherhood will be affirmed; but in so far as it is in favor of the Puritans it will be reversed, and judgment will be here rendered that appellant recover of it the sum of $1,500, interest thereon from November 1, 1913, and the costs of this court and the court below.

### On Motion for Rehearing.

By the terms of the contract appellant was entitled to receive on account of the disability suffered by him as found by the jury, one-half of the sum the beneficiary named in the certificate would have been entitled to had appellant died at the date of such disability. It was stipulated in the contract that should appellant die "after 18 months and before 24 months," the society should be liable for only 90 per cent. of the amount ($3,000) named in the certificate. Appellant became disabled within the meaning of the contract more than 18 months and less than 24 months after the time the certificate was issued to him, and therefore was entitled to recover only one-half of 90 per cent. of $3,000, or $1,350, instead of $1,500, as determined by the judgment rendered here. To correct this error, the motion will be granted in so far as it is for such relief, and the judgment will be so modified as to award appellant a recovery of $1,350, instead of $1,500. In other respects the motion will be overruled.