## INDEPENDENT ORDER OF PURITANS v. BROWN et al. (No. 1770.)

(Court of Civil Appeals of Texas. Amarillo. March 9, 1921.)

**1. Evidence ⬳83(1)—Presumption in favor of Commissioner of Insurance having done duty.**

The presumption is in favor of the Commissioner of Insurance and Banking of the state having done his duty under Vernon's Sayles' Ann. Civ. St. 1914, art. 4841, requiring that a merger between life insurers must be evidenced by a contract in writing setting out the terms and conditions in full and filed with the commissioner, etc.

**2. Evidence ⬳186(6)—Copy of copy of merger contract filed with Commissioner of Insurance not admissible in action on beneficial certificate.**

In suit on a fraternal order's beneficial certificate, if only a copy of the contract of merger between defendant order and another, decedent's original insurer, was filed with the commissioner of insurance, a copy of such copy would not be admissible in evidence under Rev. St. art. 3696.

**3. Evidence ⬳186(6) — Agreement whereby defendant fraternal order assumed contracts of order joined by decedent admissible.**

In an action on a beneficial certificate against a fraternal order which had assumed the insurance contracts of the order which decedent originally joined, under the facts tending to show that the original contract of merger between the two orders was executed in duplicate, and one copy filed with the Commissioner of Insurance pursuant to Vernon's Sayles' Ann. Civ. St. 1914, art. 4841, and defendant order at any rate having been notified to produce the original contract on trial, or that secondary evidence would be offered, the agreement of merger produced in court and certified to by the commissioner *held* admissible, as well as the agreement transcribed in the minutes of the order which decedent originally joined, which two instruments, together with certain oral testimony as to the adoption of the contract by the two orders, established it as made.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Pleading ⊚⇒291(2)—Fraternal order, which did not deny under oath authority of officers to execute assumption agreement, could not show lack of authority.**

Under Rev. St. art. 3710, in an action on a beneficiary certificate issued by one fraternal order and assumed by defendant order, plaintiff declaring on the contract of assumption, charging defendant order with liability thereunder, and defendant order not denying under oath execution of the assumption instrument so charged, defendant order could not show that its officers which had executed the assumption instrument had no authority to do so.

**5. Evidence ⊚⇒80(1)—Presumption of identity of foreign law as to merger of fraternal orders.**

In the absence of proof of the laws of the state of defendant fraternal order's organization, the Court of Civil Appeals may presume it had power under the laws of such state, as such orders have under the law of Texas (Vernon's Sayles' Ann. Civ. St. 1914, art. 4841), to make mergers or amalgamations with other societies as provided by the laws of the order.

**6. Insurance ⊚⇒705—Executive council of order held authorized to prescribe terms of amalgamation with other order.**

Executive counsel of defendant fraternal order, sued on a beneficial certificate issued by another order, with which it is claimed to have merged, *held* to have had authority to prescribe the terms of the amalgamation under the supervision of the Supreme Council of the order, its supreme governing body, with full power and control over all transactions.

**7. Insurance ⊚⇒705—Presumption that chief executive officers of fraternal order were authorized to make merger contract.**

In the absence of evidence showing that the Supreme President and Secretary of defendant fraternal order were not authorized to make the contract of merger with another order which they did make, the presumption should prevail that such officers of defendant order were acting within their authority, and were authorized to execute the contract, especially where the supreme ruling body of the order affirmed and ratified their acts.

**8. Insurance ⊚⇒705—Fraternal order which merged with other held estopped to repudiate part of merger agreement.**

Defendant fraternal order, which through its supreme president and secretary executed a contract of merger with the order originally joined by decedent, which contract was approved by the supreme governing body of defendant order, *held* estopped, as against the beneficiaries of decedent, to repudiate the part of the merger agreement, adopting the other order's certificates, stipulating against change of rates or amount, though such stipulation was against the law of defendant order.

**9. Insurance ⊚⇒719(1)—Contract of insurance and certificate legally made will control subsequent by-law.**

If a subsequent by-law of a fraternal order is in conflict with its insurance certificate, and the contract of insurance legally entered into, the contract and certificate will control.

**10. Insurance ⊚⇒725—No change in contract made by fraternal order except by consent.**

Ordinarily there can be no change in the contract of insurance as made by a fraternal order except by consent of both parties.

**11. Insurance ⊚⇒800—Fraternal order not permitted to transact business in state subject to general life insurance statutes.**

Defendant fraternal insurance order, not having been permitted to transact business in Texas as a fraternal society, the statutes controlling life insurance policies apply to it, particularly Rev. St. art. 4746, imposing penalty for failure or refusal to pay a policy when due under its terms, and the order will not be protected by the exception named in article 4830, exempting such societies from all provisions of the insurance laws, but will be held liable for an attorney's fee for delay in payment.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Action by Ira Brown, as guardian of and next friend for Lillian Brown and others, against the Independent Order of Puritans. From judgment for plaintiffs, defendant appeals. Affirmed.

Kirby, King & Keeble, of Abilene, for appellant.

Smoot & Smoot, of Wichita Falls, for appellees.

HUFF, C. J. This is an action by Ira Brown, as guardian and next friend for Lillian Brown and others, against the appellant on a benefit certificate, in the sum of $2,400. The appellees allege they were the beneficiaries under the policy; the insured, J. A. Brown, was dead; and making other allegations necessary to recover; also alleged that the certificate was issued originally by the Ancient Order of Samaritans to J. A. Brown, of which order he was a member, and that the appellant, upon a contract of merger, assumed to pay the beneficiaries the sum of money for which it was issued. Appellant answered by general denial, and that the certificate, as alleged by the plaintiff, was issued by the Ancient Order of Samaritans; that it and appellant were fraternal benefit associations; that if there was a contract of assumption as alleged to have been made and entered into between the two orders, the execution of the contract by the parties signing for appellant was ultra vires and void; if the contract was valid and binding, that during the life of the insured the appellant, in conformity with the constitution and laws of the order, promulgated a rule increasing the monthly assessments payable by the said Brown on the certificate; the assessment provided for was $1.80 per month; that the new rate would have been $3.49 per month on the $1,000 of insurance had; that Brown had

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

only paid $1.80 per month during his life and up to the date of his death, and after the rate was increased under the resolution increasing the rate that he was only entitled to such amount of insurance as $1.80 per month would buy at his then attained age, under the rules and upon the basis of the American Experience Mortality Table, at 4 per cent., which was alleged would have entitled the beneficiaries to recover the sum only of $516, and no more. The case was tried without a jury, before the court, who filed the following findings of fact:

"First. On April 7, 1911, the Ancient Order of Samaritans issued to J. A. Brown a policy of life insurance, called a beneficial certificate, under which they agreed upon the payment of the monthly sum of $1.80 to pay to Fannie A. Brown, beneficiary, thereunder, the sum of $2,-400, upon the death of such insured. Fannie Brown having died, the minors, plaintiffs, were substituted as beneficiaries.

"Second. That a written contract was entered into November 5, 1912, signed by Independent Order of Puritans, acting through C. L. Link, Supreme President, and W. F. Landers, Supreme Secretary, with the seal of the corporation, as first parties, and the Ancient Order of Samaritans, acting through S. P. Rice, Supreme President, and J. H. Hart, Supreme Secretary, with the seal of the corporation, as second party, under the terms of which the Independent Order of Puritans undertook to take over and assume all beneficial certificates of the Ancient Order of the Samaritans, using in this connection the following language: 'That said party of the first part (Puritans) will assume the risk of the party of the second part (Samaritans) and promise and hereby agree that it will carry out the terms of the insurance contracts issued by party of the second part, and that the membership of the said party of the second part shall be accepted just as they are and that the contract of insurance shall not be changed in amount or rates, or otherwise.'

"Third. That section 4, art. 10, Laws, Rules & Regulations of the Puritans, provides: 'Members of any fraternity or other organizations, may be amalgamated with or reinsured in this order in a body or as individuals, upon such terms as may be approved by the executive council.'

"Fourth. The Puritans and its executive council and other ruling agencies have passed no resolution with reference to the acceptance or rejection of the above contract, but the assets of the Samaritans have been taken over, and all policies or beneficial certificates have been accepted and entered on its records as part of its business and all premiums have been received and the members of the Samaritans were treated as members of the Puritans. In addition, the Puritan Company has attached a written acceptance to the policy.

"Fifth. That in 1915, the committee on laws of the Puritans, passed a resolution providing: 'That the amount of insurance payable on all existing and outstanding life insurance contract in this order, either for the payment of annuity, or lump sum, amounts, shall depend upon and be fixed and determined by the amount of the monthly premium payments at the age attained by the member at the rate, on the basis of the American Experience Mortality Table, at 4 per cent. and claims hereafter existing against the Order shall be paid upon the basis.' That actuaries employed by the defendant estimate that this would mean a premium of $7, per $1,000 at the age of 47.

"Sixth. That the insured, J. A. Brown, had no actual notice of this change in the rates and continued paying on his policy at the same rate, $1.80 per month, up to the time of his death, and that amount was received monthly by the defendant and retained by it, without question.

"Seventh. That J. A. Brown died March 26, 1917, and due proof of death was made and received without question by defendant, who offered an adjustment of $416, but no formal tender of any amount was actually made by defendant or waived by plaintiffs.

"Eighth. That the plaintiffs have received no part of the amount provided for in the face of the policy.

"Ninth. That Ira Brown, son of the deceased, is the duly appointed and acting executor of the estate of J. A. Brown, and guardian of the person and estate of the minor plaintiffs, who are children of the deceased.

"Tenth. That the defendant company is a beneficial insurance company, but is without a permit to do business in the state of Texas, since the refusal to it of a permit by a commissioner in 1916, and has made no annual statement of the report to the Commissioner of Banking and Insurance for the state of Texas, since that made for the year ending December 31, 1916.

"Eleventh. That $500 would be a reasonable attorney's fee to be charged by the attorneys for plaintiff, and that 6 per cent. per annum would be a reasonable amount of delaying payment."

Appellants, by the first assignment, present error in admitting in evidence and in considering, over the objection of the appellant, the testimony of the witness Chas. O. Austin, as given in his deposition in answer to direct interrogatories, and in admitting in evidence and in considering, over the objections of the defendants, a certain copy of a copy of a contract, alleged to have been entered into by and between the two orders above mentioned, which copy was attached to the deposition of the witness. Charles O. Austin was Commissioner of Insurance and Banking of the state of Texas, and testified by deposition that he had on file in his department and under his control a copy of a contract or reinsurance agreement between the Independent Order of Samaritans and the Ancient Order of Puritans, and that a copy of said copy of the agreement was attached to his deposition. Appended to the instrument is a certificate to the effect that—

The instrument "is a true, full and correct copy of the reinsurance agreement, and affidavits relative to the agreement between the Independent Order of Samaritans, now on file in and forming a part of the records of this department."

The instrument attached shows to be an agreement signed by the president and secretary of the respective companies, with the seals of the company attached. There appears also to be appended a statement by the Supreme Secretary of appellant company, as follows:

"I hereby certify the above to be a true and correct copy of the original on file in the home office."

The secretary of appellant also testified that he had the agreement in the home office of the company. In addition to the above testimony, S. P. Rice, the former president of the Samaritans, testified to executing the agreement, and the plaintiff also offered in evidence the minutes of that order, approving the contract, and setting it out at length on the minutes. The statement of facts shows that the minutes of the Samaritans were offered in evidence, and the statement of facts shows:

"Here follows a copy of the alleged contract between the Independent Order of Puritans and the Ancient Order of Samaritans, as set out in the deposition of Chas. O. Austin, hereinabove given."

[1] The testimony of the Commissioner does not indicate to our mind that he was testifying that only a copy of the original was on file in his office. The facts in this case would rather indicate that the contract was signed in duplicate, and the trial court finds that the contract on file in the Commissioner's department was signed by the officers with the seal of the respective orders attached thereto. The presumption is in favor of the Commissioner having done his duty, and Vernon's Sayles' Ann. Civ. St. 1914, art. 4841, requires that—

A merger must be "evidenced by a contract in writing, setting out in full the terms and conditions of such merger, * * * and filed with the Commissioner of Insurance and Banking of this state, together with a sworn statement of the financial condition of each of said societies," etc.

[2] It would seem from the deposition of the Commissioner that that provision of the law had been complied with, and he evidently was referring to the copy as the agreement between the parties, filed in his office. If so, a certified copy of such agreement from the department authorized the introduction of the same in evidence in the case. Article 3696, R. C. S. Of course if it was only a copy of the contract that was filed with the Commissioner, a copy of that copy, as we understand the decisions, would not permit its introduction as evidence under the statute. The court evidently found that it was not a copy of the copy, and our reading of the facts indicate to our mind that the Commissioner was testifying as to the original agreement being on file with him. But if we are mistaken in this matter, the appellant was notified to produce the original upon the trial, or secondary evidence would be offered. Admittedly they had either the original or a duplicate original in their possession, which they did not produce upon notice. The appellees introduced in evidence the minute book of the Samaritans, which contained the contract as agreed upon, and this was proven to be the contract made by the parties, as testified to by Mr. Rice, and the statement of facts says that this was in the same terms as that attached to the deposition of the Commissioner. These facts do not appear to have been disputed.

[3] We think there was no error under the facts of this case in the court receiving in evidence the agreement certified to by the Commissioner as well as the agreement transcribed in the minutes of the Samaritans, and these two instruments, together with the oral testimony, establish the contract as made. The evidence in this case shows, as above stated, that appellant has retained in its possession the contract, and, as found by the court, has received the payments from the insured, under the contract, and the Supreme Secretary of appellant testified that the contract was not repudiated by the ruling body of the order after the agreement was made, but that a resolution was adopted affirming these matters, in accordance with section 1, article 12, of the laws, rules, and regulations of the order. The appellant's first proposition is that the written contract should not be considered in evidence without proper proof that such contract was actually entered into by the parties sought to be bound thereby. The evidence amply shows that it was signed by the president and secretary of the respective orders and spread upon the minutes of the Samaritan Company and approved by that order, and the Supreme Secretary of appellant testified that they adopted and approved the same under the rules and laws of that order, and affirmed it. We think this testimony sufficiently justified the court in admitting the contract so established.

[4] The second proposition is to the effect that a fraternal benefit association cannot be bound by the terms of the contract entered into by any of its officers, unless such officers were authorized by the constitution and by-laws of the association to enter into it; and the third proposition that a contract entered into by the officers of a fraternal beneficiary association, the terms of which are contrary to and in conflict with the constitution and by-laws of the order, is ultra vires and void. In the first place, we hardly think the second and third propositions are relevant to the assignment, but the evidence amply warranted the court in finding that it was entered into by authority of the governing body of the organization and fully ratified; and in addition to that the plaintiff de-

clared on the contract of assumption, charging appellant with liability thereunder, and the execution of the instrument so charged was not denied by appellant under oath. Under article 3710, R. C. S., as we understand, the appellant would not be permitted to show that the officers purporting to execute the instrument had no authority to do so. The question of ultra vires is not presented by the assignment; however, we may say it appears from the authorities cited by appellant that it now seeks to attack the merger of the two organizations. In the first place, it is not pleaded that the consolidation was illegal, but the appellant admits liability to the amount of $516 under the contract, and the acceptance of the insured's payment of the assessment is admitted. Our statutes authorize merger, the contract of which and the condition of the two orders so merging must be filed with the Commission of Insurance and Banking, and must be sufficient to satisfy him the merger or transfer is just and equitable to the members of each society, and thereafter the merger is in full force and effect. Article 4841.

[5] The powers granted the executive council of appellant authorize it to amalgamate with others orders on such terms as they should approve. Though appellant was a society of another state, in the absence of proof of the laws of that state we may presume it had power under the laws thereof to make mergers or amalgamations as provided by the laws of the order. The authorities cited by appellant so recognize the law. It is said therein, substantially, in the absence of proof of the law under which appellant was incorporated, it must be presumed, for the purpose of disposing of the case, that it has the same powers that are granted by statutes to such societies by the laws of this state. Whaley v. Bankers' Union, etc., 39 Tex. Civ. App. 385, 88 S. W. 259. If there had been no power of merger by the laws or by the charter or laws of appellant, the proposition made by it would be sound. Not being a corporation de jure, and not authorized so to act, it could not be a de facto merger, as it would have been against the law in either event. There is no such case before us.

We will consider the second assignment and the fourth together. It is insisted that the conclusions of law by the trial court were error in the holding in effect that if the Supreme President and Secretary of appellant were not originally authorized to make the contract the ruling body of that order had accepted the same, received the premiums paid, and accepted the benefits under the contract, and that it is now estopped. It is also asserted the judgment is erroneous in rendering for the amount sued for because wholly contrary to the law and evidence. It was shown the Supreme Council of appellant is the supreme governing body of the order, and had full power and control over all transac-

tions of the order. The executive council could amalgamate other orders with appellant upon such terms as may be approved by it. At the first regular session of the Supreme Council, held after such agreement was made, a resolution was adopted, affirming the same in accordance with the laws of the order. It seems from the transcript there was a blank assumption attached to the contract, to the effect that appellant "herewith agrees to assume the insurance contract liabilities, as set forth in the contract, to which this rider is attached." It appears that after the death of the insured the appellant did attach a rider to the certificate and assumption, changing the agreement by adding "subject to the laws, rules and regulations of the Independent Order of Puritans." After making the contract appellant adopted the resolution set out in the fifth finding of fact by the trial court. We may add that the second clause of the court's finding, setting out part of the contract, after the word, "otherwise," separated by a comma, is the following:

"And that said membership shall be admitted to and remain upon equal footing with all other members of said party of the first part [Puritans]."

[6, 7] Without discussing some other rules or setting them out, we think the executive council had the authority to prescribe the terms of amalgamation under the supervision of the Supreme Council. This particular contract was affirmed by that body, and in the absence of evidence showing that the Supreme President and Secretary were not authorized to make the contract they did, the presumption should prevail they were acting within their authority and authorized to execute it; especially so when the supreme ruling body affirmed and ratified their acts. Indeed, Mr. Rice, the president of the Samaritans, testified:

"I know that the parties signing the contract were authorized to make the contract for the respective companies."

[8] The Supreme Secretary of appellant, who signed the contract, does not pretend there was no such authority expressly granted. There is no express law of the order pointed out prohibiting such officers from signing such contract. It is evidently appellant's contention that it was against the law of the order to stipulate against the change of rates or the amount of the certificate. No law is pointed out prohibiting such agreement. If, however, there was such a law, which expressly or impliedly prohibited such contract, we think the facts in this case show the contract has been so far executed in this case that to now allow the appellant to repudiate that part of the agreement would work an injustice to the beneficiaries under the certificate, who with the insured have in good faith relied thereon. The doc-

trine, we believe, of estoppel by waiver, should apply in this case. 19 R. C. L., Mutual Benefit Societies, § 102, p. 1314; Supreme Ruling, etc., v. Crawford, 32 Tex. Civ. App. 603, 75 S. W. 844; McCorkle v. Texas Benevolent, etc., 71 Tex. 149, 8 S. W. 516; Brotherhood, etc., v. Cook, 221 S. W. 1049.

[9, 10] If the by-law of the order is in conflict with the certificate and the contract, if it was legally entered into, the contract and certificate will control. Ordinarily, there can be no change in the contract of insurance as made, except by the consent of both parties. 19 R. C. L. § 68, p. 1265. The appellant could not, under the express terms of the contract, change the note of the contract, or change the amount of the certificate. Our courts apparently hold to the doctrine while a society of this kind may so amend its by-laws as to make reasonable changes in the method of administration and the manner of conducting its business and the like, no change can be made which will deprive a member of a substantial right conferred expressly or impliedly by the certificate itself. It would seem the right of the policy holder would be stronger under an express agreement not to change the rate and amount of the certificate. Ericson v. Supreme R. F. M. C., 105 Tex. 170, 146 S. W. 160; Smith v. Our United, etc., 191 S. W. 199. The conclusion of the clause containing the covenant not to change the rate or amount of the certificate, "and that said membership shall be admitted to an equal footing with any other member," we do not think qualified the obligation not to change. As to other rights in the society, they were on equal footing, but upon the insurance feature there was a binding contract not to change. This, in effect, was the application of the members of the Samaritans for membership into appellants' society. It is not to be presumed the laws of the order were then violated, and without the insured's consent the appellant could not change rules so as to reduce the amount of the certificate. We are of the opinion that the trial court was authorized to render judgment for the amount of the face of the certificate.

[11] The third assignment assails the judgment of the court and the conclusions of law by the trial court, in allowing $500 attorney's fees. It is asserted, mutual benefit societies are exempt from the payment of attorney's fees in suits against them. The Commissioner of Insurance and Banking testified that appellant had been refused a permit to do business in the state in 1917, and since that time had never been admitted by the state to do business therein, and the trial court finds that appellant is without a permit to do business in this state, in his tenth finding of fact, heretofore quoted. Article 4830, Vernon's Sayles' Ann. Civ. St. 1914, reads:

"Except as herein provided, such societies shall be governed by this act, and shall be exempt from all provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law hereafter enacted shall apply to them, unless they be expressly designated therein."

A foreign fraternal society may transact business in this state, and be admitted for that purpose by complying with article 4843, and the license or permit may be revoked by the Commissioner under article 4854. Appellant is not protected under chapter 7, relating to fraternal societies under the laws of this state, but comes within the term of insurance companies. The exception contained in article 4830 will not protect it from provisions of the insurance law of this state, which imposed a penalty for failure or refusal to pay the policy when due, under its terms. Article 4746, chapter 2, will therefore apply. Although appellant is a fraternal insurance company, in a foreign state, if it makes an insurance contract the policy so issued will be controlled by the insurance laws of this state. Supreme Council, etc., v. Larmour, 81 Tex. 71, 16 S. W. 637. We are inclined to think this case, under the statutes governing fraternal benefit societies, falls within the exception mentioned by the Supreme Court:

"The defendant association, not being a life or health insurance company, was not within the terms of the law which imposes the penalty, except by a failure to perform an act prescribed by the statute; and it was necessary for the plaintiffs" to make the proof "to entitle them to the penalties." Supreme Council v. Story, 97 Tex. 264, 78 S. W. 1; Grand Lodge v. Moore, 154 S. W. 362.

In this case the appellees have established the failure of appellant to obtain a permit, and hence bring themselves within the exception mentioned by the Supreme Court "except by failure to perform an act prescribed by the statute." The statute in this case is not exactly the same as the one considered by the Supreme Court, but we think when it is shown that appellant was not permitted to transact business in this state, as a fraternal society, then the statutes controlling life insurance policies will apply to it, and it will not be protected by the exception named in article 4830, to which it shows no legal right.

We believe the judgment should be affirmed.